## THE STATE v. BERKLEY, *Appellant.*

1. **Criminal Practice** : CONTINUANCE : CONSTITUTION. Revised Stat utes, section 1886, wherein it provides that, on the application of a defendant in a criminal case for a continuance, the state may prevent such continuance by consenting that the facts set out in the application or affidavit for the continuance, as those to which the absent witness, if present, would testify, may be read in evidence on the trial as the testimony of such absent witness, is in conflict with article 2, section 22, of the constitution, which provides that "in criminal prosecutions the accused shall have the right \* \* \* to have process to compel the attendance of witnesses in his behalf." Per Sherwood, J. ; Black and Brace, JJ., concurring ; Norton, C. J., and Ray, J., dissenting.

2. ——— : ——— : ———. Said section 1886, of Revised Statutes, is also violative of section 1, of the fourteenth amendment of the constitution of the United States, which forbids any state to " deny to any person the equal protection of the laws." Per Sherwood, J. ; Brace, J., concurring.

3. **Criminal Law** : ASSAULT WITH AND WITHOUT FELONIOUS INTENT. The doctrine of *State v. Partlow,* 90 Mo. 608, affirmed in regard to the distinction between a defendant bringing on a difficulty with and without a felonious intent.

4. ——— : SUDDEN QUARREL : INSTRUCTIONS. Where the evidence on a trial for murder shows that the homicide was the result of a sudden quarrel, an instruction for a lower grade of homicide than murder in the second degree should be given.

92    41
96   299
97    26
97   110

92    41
98   613

92    41
101   246

92    41
102    30

92    41
106   223
106   654

92    41
111   140

92    41
117   681

92    41
118    85

92    41
133   374

92    41
138   258

92    41
146   180

92       41
d172  4647

*Appeal from Boone Circuit Court.*—HON. G. H. BURCK-HARTT, Judge.

REVERSED.

*S. Turner* for appellant.

(1) The court erred in refusing to allow a continuance until the succeeding term of the court on the ground set forth in the motion and affidavit of defendant. Under the facts and circumstances disclosed by the affidavit, the "power of the court" for procuring the personal attendance of witnesses had not been so exhausted as to warrant the prosecuting attorney in admitting the statement of what the absent witnesses would prove, and invoking the operation of section 1886 of the Revised Statutes. Nor was the court warranted in thereupon forcing defendant to instant trial. *State v. Farrow*, 74 Mo. 532; *State v. Hickman*, 75 Mo. 416. Section 1886 is an innovation upon the chartered rights of citizens on trial charged with crime. "It goes to the very verge" of article 2, section 22, of the constitution; and its invocation by trial courts, in criminal cases, should be narrowly watched, and the rights of the accused jealously guarded. *State v. Underwood*, 75 Mo. 230. (2) The court on the trial below manifestly erred in failing to instruct the jury as to manslaughter in the third or fourth degree. The difficulty arose upon a sudden ground, the evidence tending to show that deceased drew a knife and advanced upon defendant at the time the latter struck him. If defendant, in heat of passion, induced by lawful provocation, struck deceased with a club hastily picked up, and unluckily killed him, surely the court should have instructed the jury as to manslaughter; and its failure to do so is reversible error. Wharton on Homicide [5 Ed.] secs. 4, 5; *State v. Branstetter*, 65 Mo. 149; *State v. Matthews*, 20 Mo.

The State v. Berkley.

55 ; *State v. Barham*, 82 Mo. 672 ; Bishop's Crim. Law [5 Ed.] secs. 699, 701, 713 ; *State v. Banks*, 73 Mo. 592; *State v. Tate*, 12 Mo. App. 327. (3) The court committed error in refusing to give instructions numbered seven, eight and nine, as asked for by defendant, and in giving them as modified by the court. It is the settled doctrine as expounded by this court, that when the accused "seeks" or "provokes" or "brings on" a difficulty by some unlawful act, and then voluntarily enters into a difficulty resulting in the death of his adversary that he cannot invoke the principle of self-defence, however imminent his peril may have become. *State v. Shoultz*, 25 Mo. 128 ; *State v. Dunn*, 18 Mo. 419 ; *State v. Hays*, 23 Mo. 287 ; *State v. Linney*, 52 Mo. 40 ; *State v. Underwood*, 57 Mo. 40. (4) The court below erred in refusing to give instruction number eleven, of defendant's series. It fairly states the law of self-defence, in a form often passed on and approved by this court, and there was evidence on which to base it. (5) Instructions four, five, six and eight, of the series given for the state, are highly objectionable and should not have been given, at least without a proper qualification. They assume the guilt of the accused, upon insufficient hypotheses, and shift the burden of proof upon the defendant. Wharton's Am. Crim. Law, sec. 707 ; *State v. Wingo*, 66 Mo. 181, and authorities there cited.

*S. C. Major* also for appellant.

(1) The court committed error in ordering the trial to proceed in the absence of the witness, Hopkinson. The constitution, article 2, section 22, guarantees to the accused in all criminal prosecutions the right "to have process to compel the attendance of witnesses in his behalf." The affidavit for a continuance shows that the facts to which the absent witness, Hopkinson, would testify were first learned by defendant after the conven-

ing of the court, and that he had been unable by the exercise of reasonable diligence to invoke the aid of the court in his constitutional and statutory right to have process for the personal presence of said witness, or to take his deposition. (2) The trial court also erred in not instructing as to manslaughter in the third degree. The evidence fully warranted such an instruction, and it was the duty of the court to give it, although it was not asked for by defendant. *State v. Stonum*, 62 Mo. 596; *State v. Branstetter*, 65 Mo. 149; *State v. Banks*, 73 Mo. 592; *State v. Tate*, 12 Mo. App. 237; *State v. Murphy*, 14 Mo. App. 73; *State v. Barham*, 82 Mo. 67; *State v. Wilson*, 85 Mo. 134. (3) The trial court committed manifest error in refusing to give instructions numbered four, seven, eight, nine and eleven, asked by defendant, and in giving instruction number seven on the part of the state.

*B. G. Boone*, Attorney General, for the state.

(1) An affidavit for a continuance, which does not show due diligence on the part of the defendant to secure material testimony, should be overruled. R. S., sec. 1884; *State v. Miller*, 67 Mo. 607; *State v. Hatfield*, 72 Mo. 518; *State v. Underwood*, 75 Mo. 230; *State v. Jennings*, 81 Mo. 185. (2) Instructions for lower grades of homicide are properly refused where the evidence shows the offence to be murder in the first or second degree or nothing. *State v. Wilson*, 4 West. Rep. 355; s. c., 86 Mo. 520; *State v. Collins*, 86 Mo. 245; *State v. Jones*, 79 Mo. 441. (3) Instructions declaring the law, as applied to the facts in the particular case, are preferable for the guidance of the jury to abstract declarations of legal principles. *State v. Miller*, 67 Mo. 604; *State v. Little*, 67 Mo. 624. The above principle is especially applicable to defendant's seventh, eighth and ninth instructions, in which the court struck out the words "by some unlaw-

ful act," and inserted in lieu thereof the words : "Unless the defendant sought or brought on the difficulty himself, by threatening to whip the deceased, or approached him in a menacing manner." (4) The eleventh instruction, asked by the defence, was properly refused, because the fifth, sixth, seventh, eighth and ninth instructions, given by the court at the instance of the state, fully and clearly declare the law as to self-defence. *State v. Vansant*, 80 Mo. 69 ; *State v. McGuire*, 69 Mo. 200 ; *State v. Christian*, 66 Mo. 138 ; *State v. Brown*, 63 Mo. 443 ; *State v. Hudson*, 59 Mo. 135 ; *State v. Underwood*, 57 Mo. 50 ; *State v. Linney*, 52 Mo. 40. (5) The instruction on self-defence in *State v. Culler*, 82 Mo. 623, has not been criticised by this court as stated by appellant's counsel.

SHERWOOD, J.—The defendant was indicted for the murder of Martin Carlos, by striking him with a club. The jury, before whom the cause was first tried, failed to agree ; the second trial resulted in a conviction of murder in the second degree. The errors assigned relate to the refusal of a continuance ; permitting the prosecuting attorney to admit that the absent witness, Hopkinson, would testify to the facts as set forth in the affidavit for a continuance, were he personally present ; the giving and the refusing of certain instructions, and the failure to give an instruction in relation to a lower grade of offence than murder in the second degree.

I. The first point for discussion is, whether the continuance should have been granted. It showed, in the circumstances detailed in the affidavit, due diligence, and the trial court in effect so held, by calling on the prosecuting attorney to say whether he would admit, etc.; and under the strict terms of section 1886, it is requisite that the application for a continuance should be sufficient in form ; should show ample grounds why the continuance should go, before that section becomes

operative, and the prosecuting attorney is called upon to say whether it shall go or not.

This case, therefore, presents the question of the constitutionality of that section, and will decide how far the legislature may go counter to the organic law, and their acts still be held valid. Section 22, of article 2, of our state constitution, known as the Bill of Rights, so far as necessary to quote the same, is as follows: "In criminal prosecutions the accused shall have the right * * * to have process to compel the attendance of witnesses in his behalf." Mr. Justice Cooley, when discussing that portion of a written constitution termed a Bill of Rights, says: "It is also sometimes expressly declared, what indeed is implied without the declaration, that everything in the declaration of rights contained is excepted out of the general powers of government, and all laws contrary thereto shall be void. * * * While they continue in force they are to remain absolute and unchangeable rules of action and decision." Cooley Const. Lim. 36. The words of the constitution now under discussion would seem too plain for interpretation. They interpret themselves. They are to be understood according to their usual and most known signification. 1 Story Const., sec. 400. Nearly every schoolboy knows what process is, what attendance of witnesses is, and that the witnesses are to attend and testify at the place from whence the process or writ issues, and to which it is made returnable. This is the sense of the words used by the constitution, and they will admit of no other.

Does section 1886 interfere with the constitutional provision above quoted? It does. How does it do this? Just in this way: It is only where the application for a continuance shows all possible diligence that section 1886 comes into play. The witness may be most important and material; his testimony may have been discovered almost on the calling of the case for trial; he

may be temporarily absent from the state, and yet the continuance cannot go, without the consent of the prosecuting attorney, and when it does *not* go, the applicant is deprived of his constitutional right of the testimony of his witness; deprived even of his deposition, and forced to go to trial, upon the simple consent of the prosecuting attorney that the facts set out in the application "shall be taken as and for the testimony of such witness."

Is it necessary to argue, at this late day, that this method of procedure is wholly unwarranted by, and in contravention of, the plain words of the organic law? Is it necessary to say that the rights which those plain words confer, are, in the language of Judge Cooley, "excepted out of the general powers of government, and all laws contrary thereto shall be void"? Is it necessary to speak of the inestimable value to the accused to have the testimony of his witnesses delivered, *ore tenus*, before the tribunal where that accused is on trial for his life?

If it is necessary, it argues a great want of attention to, or familiarity with, that historic struggle, which finally led to the right in question being embalmed in our American constitutions, both state and federal. The right is an *absolute one; it is not the subject of diminution, barter, or exchange.* The importance of its being maintained cannot be over-estimated. Speaking on this subject, that eminent jurist, Chief Justice Marshall, said: "The right of an accused person to the process of the court to compel the attendance of witnesses seems to follow, necessarily, from the right to examine those witnesses; and, wherever the right exists, it would be reasonable that it should be accompanied by means of rendering it effectual. * * * The genius and character of our laws and usages are friendly, not to condemnation at all events, but to a fair and impartial trial; and they, consequently, allow to the accused the

right of preparing the means to secure such a trial. * * * The constitution and laws of the United States will now be considered for the purpose of ascertaining how they bear upon the question. The eighth amendment to the constitution gives to the accused, 'in all criminal prosecutions, a right to a speedy and public trial, and to compulsory process for obtaining witnesses in his favor.' The right, given by this article, must be *deemed sacred by the courts*, and the article should be so construed as to be *something more than a dead letter*." 1 Burr's Trial, 178-9.

But this right, sacred as it is, by the operation of the statute in question, is made "*a dead letter*" at the option of every prosecuting attorney in the state. From whence does the legislature derive its power to divest the trial court of that judicial judgment and discretion lodged there by the constitution, and confide them to the breast of the prosecuting officer? In my humble opinion, the legislature has no more authority to do this than to authorize him to pass on the defendant's application for a change of venue, or his motion for a new trial. From whence does the legislature derive the power to deny the simple right conferred by the organic law, and, in lieu thereof, compel the accused to accept such a beggarly substitute as section 1886 offers? If such legislation is valid, then there is no boundary and no limit imposed by the constitution, which may not be over-ridden and destroyed in the same way, whenever the legislature so wills it.

I have already suggested the inestimable value to the accused of having the testimony of his witnesses delivered *ore tenus*, at the time and place of his trial. All the sages of the law have so regarded it. Speaking on this subject, Blackstone observes: "This open examination of witnesses, *viva voce*, in the presence of all mankind, is much more conducive to the clearing up of truth than the private and secret examination taken

The State v. Berkley.

down in writing before an officer, or his clerk, * * * where a witness may frequently depose that in private which he will be ashamed to testify in a public and solemn tribunal. * * * Besides, the occasional questions of the judge, the jury, and the counsel, propounded to the witness on a sudden, will sift out the truth much better than a formal set of interrogatories previously penned and settled; and the confronting of adverse witnesses is also another opportunity of obtaining a clear discovery which can never be had upon any other method of trial. * * * In short, by this method of examination, and this only, the persons who are to decide upon the evidence have an opportunity of observing the quality, age, education, understanding, behavior, and inclinations, of the witness; in which points all persons must appear alike when their depositions are reduced to writing, and read to the judge in the absence of those who made them; and yet as much may be frequently collected from the manner in which the evidence is delivered, as from the matter of it." 2 Cooley's Blackstone, pt. 1, 373.

Touching the same matter, Starkie says: "In these, as in so many other cases, it is for the jury to estimate the degree of influence by which the testimony of a witness is likely to be corrupted, and to determine whether, under all the circumstances, he may be the witness of truth. In arriving at this conclusion, a consideration of the demeanor of the witness upon the trial, and of the manner of giving his evidence, both in chief and upon cross-examination, is, oftentimes, not less material than the testimony itself. An over-forward and hasty zeal on the part of a witness in giving testimony which will benefit the party whose witness he is, his exaggeration of circumstances, his reluctance in giving adverse evidence, his slowness in answering, his evasive replies, his affectation of not hearing or not

understanding the question for the purpose of gaining time to consider the effect of his answer, precipitancy in answering without waiting to hear or to understand the nature of the question ; his inability to detail any circumstances wherein, if his testimony were untrue, he would be open to contradiction ; or his forwardness in minutely detailing those 'where he knows contradiction to be impossible ; an affectation of indifference—are all, to a greater or less extent, obvious marks of insincerity. On the other hand, his promptness and frankness in answering questions, without regard to consequences, and especially his unhesitating readiness in stating all the circumstances attending the transaction, by which he opens a wide field for contradiction, if his testimony be false, are, as well as numerous others of a similar nature, strong internal indications of his sincerity. The means thus afforded, by a *viva-voce* examination, of judging of the credit due to witnesses, especially where their statements conflict, are of incalculable advantage in the investigation of truth ; they not unfrequently supply the only true test by 'which the real character of the witnesses can be appreciated." Starkie's Evid. [9 Ed.] 727, 728.

Elsewhere the same learned author observes : "As the deposition of dead or absent witnesses are, in point of law, of a secondary nature to the *viva-voce* testimony of witnesses subjected to the ordeal of cross-examination, so are they inferior and weaker in point of force and effect. So true is it, that a witness will frequently depose that in private, which he would be ashamed to certify before a public tribunal. It is by the test of a public examination, and by that alone, that the credit of a witness, 'both as to honesty and ability, can be thoroughly tried and appreciated. *Nam minus obstitisse videtur pudor enter paucos signatores*, is an ancient and a powerful observation in favor of oral testimony." *Ibid*, 766.

If the deposition of absent witnesses are, in point of law, of a *secondary nature*, to the *viva-voce* testimony of witnesses subjected to the ordeal of cross-examination, how low in the scale of evidence, both in point of law, and in point of fact, must we place the affidavit of the accused, *swearing what some one else will swear ?* But, it may be urged that the legislature has provided that the facts set forth in the affidavit " shall be taken and received by the jury as the testimony of the absent witness." So it has, but *all*-that a legislature enacts does not necessarily pass for law. So, too, it might enact that a piece of *palpable pot-metal*, should be " taken and received " by a jury, as *genuine guinea gold ;* but I imagine that all the legislatures in the land would not have sufficient power to make a common-sense jury so take and receive it. There is a limit to the power of the legislature ; there is a boundary over which it may not pass. It cannot make the impossible, *possible*, nor in defiance of the Bill of Rights, compel the accused to accept *a piece of paper instead of a man.*

"The question presents itself, whether anything may be made the law of the land, or may become due process of law, which the legislature, under the proper forms, has seen fit to enact ? To solve this question, we have only to consider for a moment the purpose of the clause under examination. That purpose, as is apparent, was individual protection, and limitation upon power, and any construction which would leave with the legislature this unbridled authority, as has been well said by an eminent jurist, ' would render the restriction absolutely nugatory, and turn this part of the constitution into mere nonsense.' The people would be made to say to the two houses, ' You shall be vested with the legislative power of the state, but no one shall be disfranchised or deprived of any of the rights or privileges of a citizen unless you pass a statute for that purpose.

In other words, you shall not do the wrong unless you choose to do it.' " 2 Story's Const. [ 4 Ed. ] sec. 1943.

Speaking of the sixth amendment to the constitution of the United States, already quoted, Mr. Justice Davis says : ''These securities for personal liberty thus embodied were such as wisdom and experience had demonstrated to be necessary for the protection of those accused of crime. And so strong was the sense of the country of their importance and so jealous were the people that these rights, highly prized, might be denied them by implication, that when the original constitution was proposed for adoption it encountered severe opposition, and, but for the belief that it would be so amended as to embrace them, it would never have been ratified. Time has proven the discernment of our ancestors ; for even these provisions, expressed in such plain English words that it would seem the ingenuity of man could not evade them, are now, after the lapse of more than seventy years, sought to be avoided. * * * The history of the world had taught them that what was done in the past might be attempted in the future."
*Ex parte Milligan*, 4 Wall. 120.

Moreover, I regard section 1886 as in plain violation of section 1, of the fourteenth amendment of the constitution of the United States, which forbids that any state '' deny to any person the equal protection of the laws." I illustrate this view in this way: Here are two defendants in the same court, both on trial for their lives ; both make equally meritorious applications for a continuance. In one case, the prosecuting attorney graciously waives the interposition of his *veto*, and the trial court is consequently *allowed* to exercise its ordinary judicial discretion, and the grounds therefor being ample, the continuance goes, and *that* defendant secures, as a matter of *favor*, what belongs to him as a *home-born constitutional right*, the attendance of his witnesses. In the *other* case, the prosecuting attorney *does* veto the

application ; does overrule the judicial discretion of the court ; does over-ride the constitutional right of the defendant ; and so the latter is forced into a trial on whose result his life depends, with nothing better *than a piece of paper*, on which is written something which, *on its face*, does not bear even so much probative force as *hearsay testimony*. Thus, *three* constitutional rights are stricken down by one and the same blow ; the constitutional right of the trial judge to the exercise of his judicial discretion in all cases coming before him ; the constitutional right of the defendant to compulsory process for his witnesses, and his constitutional right to the "equal protection of the laws." *State v. Hayes*, 81 Mo. 574. Thus affording an apt illustration of what Judge Cooley so strongly says : "The securities of individual rights, * * * cannot be too frequently declared, nor in too many forms of words ; nor is it possible to guard too vigilantly against the encroachments of power, nor to watch with too lively a suspicion the propensity of persons in authority to break through the '*cob-web chains of paper constitutions*.' " 2 Story's Const., sec. 1938.

I will not pursue the subject further. I have already done so on a former occasion, where will be found collected abundant authorities in support of the positions here taken. *State v. Jennings*, 81 Mo. *loc. cit.* 193.

II. It is unnecessary to notice the numerous instructions in detail. There were seven given on behalf of the defendant, fourteen on behalf of the state, and three as modified by the court, making twenty-four instructions in all, enough, in all conscience, to confuse and mislead any jury in the land. I will take one as the type of the rest. The seventh instruction, given at the instance of the state, is faulty in the same particular as were the instructions in *State v. Partlow*, 90 Mo. 608, because it makes no distinction in regard to bringing on

a difficulty with a felonious intent, and in bringing it on without such felonious intent.    There is an obvious dif-ference, as in that case was ruled.

III.   An instruction should have been given in rela-tion to a lower grade of homicide than murder in the second degree.   The evidence tends to show that the killing was the result of a sudden quarrel.   This would furnish basis for such an instruction.   Indeed, the fourth instruction given on behalf of the state recognizes that defendant's guilt could fall below murder in the second degree.   *State v. Wilson,* 85 Mo. 134; *State v. Barham,* 82 Mo. 67.

We reverse the judgment and remand the cause. Black and Brace, JJ., concur; the former as to para-graph one in a separate opinion; Judge Brace *in toto.* Norton, C. J., dissents as to all the paragraphs except number three, and Ray, J., does the like.

BLACK, J., CONCURRING.   According to the rule asserted in *State v. Hickman,* 75 Mo. 418, and *State v. Jennings,* 81 Mo. 185, Revised Statutes, section 1886, can only be invoked by the state after the accused, by the exercise of reasonable diligence, shall have un-successfully employed the power of the court to secure the personal attendance of his witnesses.

The legislature has the right to enact reasonable laws regulating the use of the process employed by the courts to bring witnesses before them ; and if the statute means that, and only that, indicated by the two cases before noted, then I am prepared to affirm its constitu-tionality.   But that section must be considered with the preceding sections which determine what the applica-tion for a continuance shall state and disclose.   By those sections the defendant must, in all cases, state what facts he believes the witnesses will prove.   Section 1886 then declares that "if, in any such case, the adverse party will consent that on the trial the facts set out in

The State v. Berkley.

the application, or affidavit, as the facts which the party asking the continuance expects to prove by the absent witness, shall be taken as and for the testimony of such witness, the trial shall not be postponed for that cause," etc.

In every case where the accused makes a good showing for a continuance, he is bound to go to trial without his witnesses, and without process for them, if the prosecuting officer sees fit to say he will let the accused take the affidavit, in so far as it states what the defendant expects to prove, as the evidence of the absent witness. The defendant may show that he has used all reasonable efforts to have his witnesses summoned, that they are within the jurisdiction of the court and can be served ; or he may show that they have been served, but do not appear, and can and ought to be attached ; yet, in all these cases, he must go to trial without them. The statute makes no exception. Its evident purpose is to substitute the affidavit for the witnesses, and thus avoid the necessity of bringing the witnesses before the court. The plain sense of the law is to deprive the accused of the right " to have process to compel the attendance of witnesses in his own behalf," as is secured to him by the state constitution ; but I do not agree that the statute violates any other provision of the state, or any provision of the federal, constitution.

NORTON, C. J., DISSENTING. — It needs no argument to establish the proposition, that a statute which denies to a person criminally charged the right to process to compel the attendance of his witnesses is unconstitutional and void. The proposition is self-evident and the bare statement of it establishes its truth. But I do not understand, as is assumed by the court in its opinion, that the statute in question, either expressly, or impliedly, or by proper construction, denies this right. It is clear that on its face it contains no such denial, but,

on the contrary, as construed by this court in *State v. Hickman*, 75 Mo. 418, it was held to be operative, only, in a case where the accused had had the benefit of the process of the court, and where such process proved to be ineffectual in bringing the witness into court. The true purpose and intent of the legislature, as thus construed, so far from denying to the accused process for his witnesses, was to give him the benefit of the evidence of the witnesses which the process of the court had failed to secure to him by bringing the witness into court, thus declaring that the trial should not proceed without such evidence being admitted.

I am not prepared to say and will not say that the General Assembly, the members of which were as capable as we are to appreciate the importance of the right conferred by the constitution on persons criminally accused to have process to compel the attendance of their witnesses, and who, doubtless, were animated by as ardent a desire as we are to preserve in its integrity and full force such right, have transcended the limit of their power, in the enactment of the statute in question which, in no way, impairs such right by a denial of such process, unless the constitutional provision be so construed as not only to give the accused a right to process to compel the attendance of his witnesses, but that the accused cannot legally be tried till such process proves to be effectual in bringing the witness into court to deliver in person his evidence.

While the reasoning of the opinion results in such a construction, I cannot believe that it is intended so to construe the constitution as would render the trial of a person criminally charged impossible so long as the party accused might will it to be so. If, as is argued, the chief object of the constitutional provision is to secure the attendance of the witness, and his evidence only as an incident, then it logically follows that the accused might stand on such right and refuse to be tried

till the attendance of the witness was secured. If, on the other hand, the object of such provision is to secure the evidence of the witness, and his attendance as a means of securing it, how can it be said that a statute, which provides that the accused, before he can be put on his trial, shall, when the process of the court has failed to bring the witness, have the benefit of the evidence of such witness, is obnoxious to the constitution? The law deals in substance, and not in shadows.

And if it is, as intimated in the opinion, within the discretion of the trial judge to refuse to grant a continuance in a case where the person accused has had the process of the court to compel the attendance of his witnesses, which has proved to be ineffectual, and compel him to go to trial without either the attendance of his witnesses or their evidence, how can the statute in question be condemned as unconstitutional, which, as heretofore construed, provides that where the process had has not brought the witness, the accused shall not be put on his trial unless the state admits, through its prosecuting attorney, what the accused avers in his affidavit for a continuance the absent witness would prove or swear to if present. It is, however, assumed in the opinion that the statute in question interferes with the judicial discretion of the court, in that it provides that if the prosecution admit as the evidence of the witness, on account of whose absence a continuance is asked, what the applicant for the continuance states he expects to prove by him, the cause shall not be continued, but the trial shall be proceeded with, and that the statute is unconstitutional and void on that account and for that reason. How this can be said to be an interference with judicial discretion, I am not able to perceive. If it is, then, for the same reason, section 1884, Revised Statutes, which provides what an affidavit shall contain before the court can grant a continuance, must also be condemned.

Besides this, from an early period in the history of

jurisprudence in this state, there have been on the statute books laws providing that in civil cases, where one party applied for a continuance on account of the absence of a witness and stated what he expected to prove by such witness, that the cause should not be continued if the opposite party would admit either the truth of such statements, or that they might be received as the evidence of such witness, and, although the state, during all that time, has not been lacking in astute lawyers and judges, none of them till now have been astute enough to discover that such statutes were unconstitutional and void because they interfered with the discretion of the trial judge. Section 3596 of the revision of 1879, on that subject, is as follows : "If the affidavit does not contain a sufficient statement of facts as herein required, the court shall overrule the same ; but if, upon the contrary, the court shall find the affidavit sufficient, the cause shall be continued, unless the opposite party will admit that the witness, if present, would swear to the facts set out in said affidavit, in which event the cause shall not be continued, but the party moving therefor shall read as the evidence of such witness the facts so stated in such affidavit and the opposite party may disprove the facts disclosed, or prove any contradictory statements made by such absent witness in relation to the matter in issue and on trial."

For the reasons herein given, I dissent from the conclusion reached by the majority of the court, that the statute in question is void, and in the views expressed, Judge Ray concurs.