The State v. McDaniel.

The State v. McDaniel, *Appellant.*

1. **Criminal Law :** INDICTMENT : MURDER. In an indictment for murder it is not necessary to charge that the weapon with which the crime was alleged to have been committed was a deadly or dangerous one.

2. ———: ———: CLERICAL MISTAKE. An indictment for murder which charges the assault and wounding to have occurred on the twenty-fifth day of December, 1886, from the effects of which the deceased died on the twenty-fifth day of December, 1885, is not fatally defective. The mistake is merely clerical, is cured by the statute (R. S., 1879, sec. 1821), and should be disregarded.

3. **Practice :** MOTION FOR NEW TRIAL : REMARKS OF COUNSEL. The point made in the motion for new trial, that counsel made improper remarks in argument, will not be noticed in the Supreme Court, where such remarks have not been preserved in the record. Facts stated in the motion for new trial are not proved by the motion itself.

4. **Criminal Law**: MURDER : PROVOCATION. One who goes to the house of another with preconceived malice and seeks a difficulty, and, with intent to kill, provokes the other to first assault and strike him, will be guilty of murder in the first degree, if he kills such other in the difficulty which ensues.

5. —— : —— : —— : SELF-DEFENCE. One who brings on a difficulty for the purpose of taking the life of another cannot rely upon self-defence to shield himself.

6. —— : —— : —— : ——. An instruction that the defendant could not avail himself of the law of self-defence if he commenced the difficulty, or brought it on by any wilful and unlawful act of his, or voluntarily and of his own free will entered into the difficulty, is not erroneous, under the facts of this case, when taken in connection with another for defendant which declares that he was not the aggressor if deceased assaulted him upon the provocation of words alone, and that no words however grievous would justify the deceased in assaulting him. (Sherwood and Brace, JJ., dissenting).

## Appeal from Texas Circuit Court.—Hon. C. C. Bland, Judge.

AFFIRMED.

No brief for appellant.

*B. G. Boone*, Attorney General, for the state.

Such an error as the one appearing on the face of the indictment, viz., alleging that the offence was committed on a day subsequent to the finding of the indictment, is merely clerical, and this court will not reverse. *State v. Eaton*, 75 Mo. 586; R. S., sec. 1821 ; *State v. Burnett*, 81 Mo. 119. It was not necessary to allege in the indictment that the knife with which the mortal wound was inflicted was a deadly weapon. This is not a question of law to be determined on demurrer or motion in arrest, but a question of fact for the jury. *State v. Harper*, 69 Mo. 425. A knife is recognized by the statute as a deadly weapon, and it

need not be so alleged in the indictment. Acts 1885, p. 139 ; *State v. Hoffman,* 78 Mo. 256. The eighth instruction given for the state asserts the doctrine, that although the jury may believe that Kevitt, the deceased, struck the first blow with his fist, yet if they further believe that defendant went to Kevitt's house with preconceived malice and intentionally sought and brought on the difficulty and provoked Kevitt to strike him and make the first assault, with the intention of killing Kevitt, then the jury will find defendant guilty of murder in the first degree. This declaration of law is, under the evidence and in connection with the other instructions given, not improper. The main feature in this, as in other similar cases, is the intent with which defendant entered into the difficulty. *State v. Partlow,* 90 Mo. 608 ; *State v. Christian,* 66 Mo. 138 ; *State v. Underwood,* 57 Mo. 40.

BLACK, J.—The defendant was indicted at the May term, 1886, of the circuit court of Texas county, for killing Victor Kevitt. The trial resulted in a verdict of guilty of murder in the first degree. From a judgment entered in accordance with the verdict, the defendant appealed, but we have no brief on his behalf and must look to the motions in arrest, and for new trial, for the grounds of his complaint.

One ground stated in the motion in arrest is, that the indictment does not state that the assault was made with a deadly or dangerous weapon, nor that the assault was made with a weapon recognized by the law to be a deadly or dangerous one. The indictment does not charge either of these facts. It simply describes the weapon used and with which the crime was committed as " a certain knife ; " that is sufficient in an indictment for murder. 2 Bish. Crim. Proc. (3 Ed.) sec. 514. It is not necessary that the weapon should be alleged to have been a deadly or dangerous one. This is not a case of

an indictment for an assault with a dangerous weapon with intent to kill, as was the case in *State v. Jordan*, 19 Mo. 212 ; *State v. Chandler*, 24 Mo. 371 ; and *State v. Hoffman*, 78 Mo. 256. Those were statutory offences, and, of course, the indictment in such cases must follow the statute.

It is next objected that the indictment is bad because it charges an impossibility. It alleges that defendant assaulted and cut the deceased on the twenty-fifth day of December, *1886*, and then states : " Of which mortal wound the said Victor Kevitt, from the twenty-fifth day of December, 1885, the year aforesaid, to the twenty-fifth day of December, 1885, and in the county aforesaid, languished, and languishing did live ; on which said twenty-fifth day of December, in the year aforesaid, the said Victor Kevitt, in the county aforesaid, of the mortal wound aforesaid, died," etc. In *State v. Eaton*, 75 Mo. 595, the indictment charged the wounding to have occurred on the thirtieth day of August, and that the deceased languished until September 1, on which day of August in the same year he died. It was there held that the insertion of August for September was manifestly a clerical error, and furnished no ground for arresting the judgment. See *State v. Burnett*, 81 Mo. 119. Again the statute (R. S., sec. 1821) declares that no indictment shall be deemed invalid, nor the judgment thereon arrested, "for stating the offence to have been committed on a day subsequent to the finding of the indictment, * * * or on an impossible day, or on a day that never happened." The indictment here was found in May, 1886, and from this, and the other allegations above quoted, it is clear, beyond all doubt, that the insertion of 1886 for 1885, was a mere clerical error ; and in view of the statute and former rulings of the court, this error furnishes no valid reason for arresting the judgment.

The further objection to the indictment, that it fails

to state that defendant did kill and murder the deceased in Texas county, Missouri, and that it fails to state where the deceased died, are not well taken in point of fact, for the indictment is specific in all of these respects.

The evidence for the state shows previous threats of defendant, and that, in October, 1885, he said he would kill Kevitt, and that he would "like for him to carry his guts in his hands a while anyway." From the evidence of several persons, who were present on the occasion in question, it appears that the accused and the deceased were neighbors in Texas county, living not more, and perhaps less, than a mile apart. On the twenty-fifth of December, 1885, five or six persons, mostly young men, assembled at the house of the deceased, preparatory to going to a dance. Some of them had fed their horses, and were intending to take dinner with the deceased. While they and the deceased were at the barn, they heard defendant coming from the direction of his house, hallooing and cursing. He came up to them, cursing and abusing the deceased, using the most vile and vulgar language. Kevitt asked him if he came there to raise a fuss with him, and the deceased said he did and that he intended to have it, at the same time he began to remove his coat. Deceased said, "Boys, I can't stand this any longer," threw off his coat, and the two men came to blows. Kevitt knocked the defendant down twice, and then made the remark that he was cut to pieces. His intestines were protruding from a large gash cut in the abdomen; these, the deceased gathered up in his hands, walked to his house, and died in a short time. The knife used by the defendant is identified as a case-knife, from four to six inches in length of the blade, pointed and sharpened, which defendant carried in a scabbard in his vest.

Deceased was also cut in the arm, and there is some evidence that he kicked the defendant, when down. It

is left in doubt as to what particular time the cutting was done by the defendant, though it must have been during the scuffle, which lasted for a few moments only. Defendant jumped on his horse, which one of the young men had borrowed before going to Kevitt's house, and rode away; and there is evidence that he then and thereafter, on the same day, threatened to kill another man, though no name is given. The defendant, in his own behalf, testified that he went to Kevitt's to get the horse; that he had no thought of getting into a difficulty; that he said he could whip any man who yoked his horse, but does not know what else he may have said; that Kevitt knocked him down three times and then jumped upon him; and that he cut Kevitt to save his own life, and would do it again under like circumstances. It is plain to be seen that the complaint made in the motion for a new trial, that the verdict is against the evidence, is not well taken. The evidence not only supports, but the weight of it is in favor of the verdict.

Facts stated in the motion are not proved by the motion itself, and as there is nothing to show that any attorney, representing the state, made any, much less improper, remarks, that complaint cannot be considered. The remarks should have been preserved in the record. Again, there is nothing to show that the court made any additions to the instruction, asked by the defendant, and that ground, assigned for a new trial, must also be disregarded.

This brings us to the instructions given at the instance of the state. The first relates to murder in the first degree and the presumption arising from the use of a deadly weapon. It is the same as the second for the state, approved in the case of *State v. Thomas*, 78 Mo. 337, and is applicable to the present case. Other instructions were given as to murder in the second degree,

and manslaughter in the fourth degree, which are unobjectionable. The distinction between murder in the first and second degree is made to turn upon the definition given to the term *deliberation*, which is defined to "mean in a cool state of the blood, as opposed to a heated state; and in deliberating there need be no appreciable space of time between the intention to kill and the act of killing. They may be as instantaneous as successive thoughts of the mind."

The terms, cool and heated state of the blood, are not used in any technical sense. They indicate clearly enough that the killing must have been done, not from passion, but from the "free act of the will, and, if so done, the act was done with deliberation, though the act had not been brooded over or reflected upon." *State v. Wieners*, 66 Mo. 27. Applied to the evidence in this case, we see no objection to the eighth instruction, which in substance is, "that, although the jury may believe that Kevitt, the deceased, struck the first blow with his fist, yet if they further believe that defendant went to Kevitt's house with preconceived malice and intentionally sought and brought on the difficulty and provoked Kevitt to strike him and make the first assault, with the intention of killing Kevitt, then the jury will find defendant guilty of murder in the first degree."

If the facts stated in this instruction are true then there can be no doubt but the offence was murder in the first degree, for the facts hypothetically stated show both premeditation and deliberation on the part of the accused. It was what may be denominated a cold-blooded murder. Nor was there, if these facts be true, any self-defence in the case. One who brings on a difficulty, for the purpose of taking the life of another, cannot rely upon self-defence to shield himself. This is too plain to call forth citation of authorities. Other instructions were given as to the burden of proof

and reasonable doubt, to which we see no valid objection. The eleventh instruction, in substance, is, that if the defendant commenced the difficulty or brought it on by any wilful or unlawful act of his, or that he voluntarily and of his own free will and inclination entered into the difficulty, then there was no self-defence in the case, and the jury should not acquit on that ground, no matter how high the defendant's passion may have arisen, nor how imminent the peril in which he was placed. In this connection should be considered the first, third, and fourth instructions given at the request of the defendant. The first and third are as follows:

"1. The court instructs the jury that, although they may believe that the prisoner, at the time of the killing of the deceased, used violent, vulgar, and abusive language towards the deceased; yet no words, however grievous, would justify the deceased, Victor Kevitt, in assaulting and beating the defendant, or in doing him great personal injury. And if the jury believe that the deceased, Victor Kevitt, upon the provocation of words alone, assaulted the defendant and was about to do the defendant great personal injury, or bodily harm, then the deceased was the aggressor and the defendant had the right to repel force by force, and to use whatever force was necessary to prevent the defendant from doing him great personal injury, although the means employed and the weapons used resulted in the death of the deceased, and if the jury so believe they should acquit; provided they further find that McDaniel did not seek and bring on the difficulty for the purpose of affording him an opportunity to kill Kevitt."

"3. If the jury believe from all the evidence that the deceased began the difficulty by assaulting the defendant and striking him and knocking him down, then the defendant had the right to use such means as were within his reach and all the energies under his

control which were apparently necessary to protect himself from great personal injury at the hands of the deceased; provided he did not bring on the difficulty for the purpose of affording him an opportunity to kill Kevitt."

The fourth instruction is a mere detailed statement of the doctrine of self-defence.

The defendant was, of course, entitled to instructions upon the case made by his own evidence, and these instructions presented in specific terms every theory of self-defence made by his testimony, and that, too, in the most favorable terms to him.   No do we see any inconsistency between these instructions given at his instance and the eleventh given for the state on the same subject. The eleventh says there was no self-defence in the case and the jury should not acquit on that ground if the defendant commenced the difficulty, or brought it on by any wilful or unlawful act of his, or if he voluntarily and of his own free will entered into the difficulty.   The first given for the defendant asserts the proposition that defendant was not the aggressor if the deceased assaulted the defendant upon the provocation of words alone; and emphasis is given to this by the further statement that no words, however grievous, would justify the deceased in assaulting the defendant.   If the defendant was not the aggressor he did not bring on the difficulty, and we can but conclude that these instructions, taken as a whole, presented the law favorably for the defendant.

It is possible that these provisos to the first and third instructions, given at the request of the defendant, were added by the court, and that it is to them the allusion is made in the motion for new trial.   The record shows no exceptions taken to these additions by the court, if such they were.   Besides this they do no more than express the law, for, as before stated, if the defendant brought on the quarrel for the purpose of

affording him an opportunity to kill Kevitt, or do him great personal injury, there is no self-defence in the case.

The bill of exceptions recites that defendant asked instructions which were refused, and to which action of the court he excepted. No refused instructions are found in the record. It was because of this supposed defect that a writ of *certiorari* was issued at a former term, but the second transcript now before us, sent up in answer to that writ, shows no refused instructions. We must act upon the record before us. *State v. Anderson*, 86 Mo. 310. Indeed it has not been suggested that the present record is defective or deficient. We may add that the court, in all, gave eighteen instructions, and they present fairly for the defendant all of the issues arising in the case.

The judgment is, therefore, affirmed. Sherwood and Brace, JJ., dissent. The other judges concur.

SHERWOOD, J., DISSENTING.—The doctrine laid down in *Partlow's case*, 90 Mo. 608, and subsequently followed in *Berkley's case*, 92 Mo. 41, is adhered to in the eighth instruction given on behalf of the state; but the trouble is, that the law, as laid down in *Partlow's case, supra*, was abandoned and lost sight of in the eleventh instruction given at the instance of the state, which gives expression to the hackneyed heresy about bringing on or voluntarily entering into the difficulty, without regard to the *motive* which prompted the party accused in so doing, and makes such party equally as guilty in the eye of the law, and equally bereft of self-defence as though he had brought on the difficulty with the sole purpose of murdering his adversary, or of doing him some great bodily harm. Adhering, as I do, to the ruling in the cases mentioned, the eleventh instruction must be declared erroneous.

And the error of the eleventh is not cured by those

given at the instance of the defendant, because it is impossible to tell which the jury took for their guide. *State v. McNally*, 87 Mo. 644; *State v. Simms*, 68 Mo. 305; *State v. Mitchell*, 64 Mo. 191; *Frederick v. Allgaier*, 88 Mo. 598.

For these reasons, I dissent from the conclusion reached in the majority opinion. Brace, J., concurs in these views.