McKay v. State.

REESE, C. J., not sitting.

---

JOE McKAY v. STATE OF NEBRASKA.

FILED APRIL 20, 1912.    No. 16,975.

1. **Information: SUFFICIENCY.** An information is defective if it charges the commission of the offense as subsequent to the date upon which the information is filed, or on an otherwise impossible date.

2. **Criminal Law:** INFORMATION: AMENDMENT: TRIAL. And in such a case it is error for the trial court, after permitting an amendment curing such defect, to require the accused, over his objection, to immediately proceed with the trial without arraignment

under and plea to such amended information and without giving him the statutory time of 24 hours in which to plead thereto.

3. ———: FORMER JEOPARDY. Where one accused of a felony is put upon trial under an information defective upon its face, and, after trial begun, the information is amended and the trial proceeded with, there being no change in the offense charged, *held*, that the accused is not thereby placed in jeopardy a second time.

4. Former Opinion Modified. Our former opinion examined, modified as set out in the following opinion, and in all other respects adhered to.

OPINION on motion for rehearing of case reported in 90 Neb. 63. *Rehearing denied. Former opinion modified.*

FAWCETT, J.

When our opinion was handed down in this case (90 Neb. 63) the county attorney of Antelope county requested, and the attorney general directed, a mandate to go down. Subsequently, and within 40 days from the filing of the opinion, the private prosecutor employed by the relatives of the deceased requested and was given leave to file a motion for a recall of the mandate and for a rehearing of the case. Upon the filing of the motion argument thereon was ordered and has been had. The case is now before us on that motion, for review.

Counsel for defendant has entered objections to a further consideration of the case in this court for various reasons which we deem it unnecessary to set out. It is sufficient to say that we permitted the filing of the motion for rehearing and must now decline to dispose of it without consideration. Defendant's objections are therefore overruled.

Upon the original hearing we held the information originally filed to be void. This holding is now assailed. The writer is satisfied with our former holding and is still of the opinion that the information was void. A majority of the court, however, are of opinion that this is stating the matter too strongly; that the information was defective merely, but not void. Paragraphs 1, 2 and 3 of the

syllabus of the former opinion are, therefore, hereby modified so as to read as follows:

1. An information is defective if it charges the commission of the offense as subsequent to the date upon which the information is filed, or on an otherwise impossible date.

2. And in such a case it is error for the trial court, after permitting an amendment curing such defect, to require the accused, over his objection, to immediately proceed with the trial without arraignment under and plea to such amended information and without giving him the statutory time of 24 hours in which to plead thereto.

3. Where one accused of a felony is put upon trial under an information defective upon its face, and, after trial begun, the information is amended and the trial proceeded with, there being no change in the offense charged, *held,* that the accused is not thereby placed in jeopardy a second time.

That portion of the opinion upon which the above three paragraphs of the syllabus are predicated is also modified so as to conform therewith.

Our opinion in relation to the employment of private counsel, as embodied in paragraphs 4, 5 and 6 of the syllabus, is next assailed. We deem it unnecessary to again discuss that question. We are satisfied with our former opinion upon that point and adhere thereto. This case presents a good illustration of the sufficiency of the reasons which prompted the legislature to amend the statute in relation to the employment of private counsel in felony cases, and of the soundness of our former holding. Here we have private counsel, employed by relatives of the deceased, not only dominating the trial of a felony case in the court below, but obtruding himself into this court, after the attorney general and the county attorney had accepted the opinion and obtained the issuance of a mandate, and attempting to further serve his private clients by a persistent contention at variance with the orderly course then being pursued by the able prosecuting officers of the state.

Our opinion as reflected in paragraph 7 of the syllabus is next assailed. An attempt is made to justify the offering in evidence of the blood-stained garments of the deceased upon the theory that the evidence shows that the defendant was seen leaving the house of the deceased early in the morning of the day when the body was discovered, and that this evidence would show that the deceased was murdered after arising in the morning. It had already been shown by the testimony of the persons who first found the body of the deceased that, at the time they made the discovery, the body was lying at the foot of the cellar stairs, fully dressed, with the bloody ax, with which the deed had evidently been committed, lying beside it. This undisputed testimony established the fact that at the time of the murder the deceased was fully dressed; but neither that testimony nor the blood-stained garments themselves would prove that he had been murdered after arising in the morning, any more than they would prove that he had been murdered before the time for retiring the evening before. No attempt to disguise the motive of counsel in offering these blood-stained garments in evidence can obscure the fact that the real motive was for the purpose of exciting the passions of the jury. We are satisfied with our former holding and adhere thereto.

The motion for rehearing is therefore overruled, and our former opinion, modified as above set out, is adhered to.

FORMER OPINION MODIFIED.

REESE, C. J., not having heard the arguments upon the motion, took no part.

ROSE, J., dissenting.

Upon further reflection, I do not think the conviction should be set aside for any reason assigned in the former opinion or in the modification thereof on the motion for a rehearing.

1. Though the information was filed in the district

court April 28, 1910, and the homicide occurred December 7, 1909, the date of the murder, as stated in the charge, was December 7, 1910. Why should the future date, which was palpably erroneous, control the charge that the felonious act had been committed in the past, where time is no part of the crime and the prosecution never outlaws? The information shows on its face that it was verified by the oath of the county attorney April 28, 1910, and that it was filed in the district court the same day. It is also formally and fully charged in technical language that defendant did feloniously make the fatal assault in Antelope county, and did strike and wound his victim, and that in consequence the victim "then and there did die." The verbs are in the past tense. They contradict the immaterial future date. The figures "1910," which constitute no part of the felony, are repugnant to the material charges in the past tense. The nonessential future date should yield to the fundamental charges that the unlawful acts were committed in the past. In these respects the legislature in adopting the criminal code of this state departed from the technical exactitude formerly required by the rules of the common law. "No indictment shall be deemed invalid, nor shall the trial, judgment, or other proceedings be stayed, arrested, or in any manner affected," declares the criminal code, "for omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense; nor for stating the time imperfectly"; nor "for any surplusage or. repugnant allegation when there is sufficient matter alleged to indicate the .crime. or person charged; nor for want of the averment of any matter not necessary to be proved; nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of .the defendant upon the merits." Criminal code, sec. 412. The criminal code further provides that a variance between the statements of the information and the evidence offered in proof thereof shall not be deemed "ground for an acquittal of the defendant, unless the court before

which the trial shall be had shall find that such variance is material to the merits of the case or may be prejudicial to the defendant." Criminal code, sec. 413.

Construing these provisions of the criminal code, this court held: "Under section 412 of the criminal code, an indictment or information is not rendered fatally defective 'for omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense, nor for stating the time imperfectly.'" *Rema v. State*, 52 Neb. 375. This rule applies to the present case, because time was not of the essence of the offense, and the date was imperfectly stated. Within the meaning of the criminal code the erroneous figures "1910" are repugnant to the formal charge that the felony had been committed by defendant before the county attorney filed his information. Besides, the omission to give the date correctly did not prejudice defendant. The county in which the murder was committed was named. The name of the murdered man was stated. The weapon used was described. In the complaint filed before the justice of the peace the date was correctly stated. Under this complaint he was arrested and bound over to the district court to answer the identical charge, giving the correct date. He had time to prepare for trial under the original information filed in the district court, and was represented by eminent counsel. Every fact necessary to a flawless information was as fully imparted to him by the judicial record of the proceeding, as would have been disclosed, had the date been correctly stated. That the information, before the year "1910" was changed to 1909, was sufficient to support a conviction seems to be sustained by the weight of authority, where the rules of the common law have been modified by statute, as in this state.

The report of *Conrad v. State*, 65 Ark. 559, shows that the indictment was filed July 14, 1896, and that it gave the date of the felony as May 15, 1899. In passing on the sufficiency of the indictment under statutes which modify the rules of the common law, the court in that case said:

"In the indictment before us the grand jury of Faulkner county accused the defendant of the crime of slander, 'committed as follows,' and alleged that the defendant, 'on the 15th day of May, 1899, then and-there maliciously, wilfully, feloniously, and falsely *did* use, utter and publish,' etc. They alleged that the offense was committed in the past, using the words 'committed' and 'did' for that purpose, on a day some time in the future. No man of common understanding could infer from the indictment that the grand jury intended to accuse the defendant of having committed a crime before it was committed. To accuse one of a crime is to charge that it was committed prior to the accusation. The allegation as to the date of the commission of the offense was a clerical error, apparent on the face of the indictment, and was not calculated to, and did not, mislead the defendant, and did not affect the validity or sufficiency of the indictment or the judgment against him"—citing *Williams v. Commonwealth*, 18 S. W. (Ky.) 1024.

In *Stevenson v. State*, 5 Bax. (Tenn.) 681, defendant was indicted for burglary February 5, 1876, the date of the crime as stated in the indictment being February 22, 1876. In passing on the sufficiency of the indictment under statutes changing the common law, the supreme court of Tennessee said: "The indictment was found 5th of February, 1876, and charges that the offense was committed 'heretofore, to wit, the 22d of February, 1876.' The code only requires that the offense be charged to have been committed previous to the finding of the indictment, no particular day being necessary to be alleged or proved where time is not an ingredient in the offense. Code, sec. 5124. It is true it has been held that it must be distinctly alleged and not left to inference or construction (*King v. State*, 3 Heisk. (Tenn.) 148), but the language here is heretofore, to wit: This certainly means before the finding of the indictment. It is true 22d of December (February) 1876, is repugnant and an impossible date, in reality a mere mistake of the draftsman, and may

be rejected, but we think the indictment good after verdict."

In *State v. Brooks,* 85 Ia. 366, the indictment was returned February 13, 1890, and charged that the offense was committed November 15, 1890, whereas the latter date should have been November 15, 1888. The prosecution was allowed to correct the mistake, and the supreme court observed: "It is not only apparent that the date '1890' was an impossible date and a clerical error, but that, omitting that date, still the offense is charged to have been committed at a time possible and certain, namely, 'on or about the fifteenth day of November, 1888.' Code, section 4538, requires that we 'must examine the record, and, without regard to technical errors or defects which do not affect the substantial rights of the parties, render such judgment on the record as the law demands. A mere clerical error, which can be discovered by a casual reading of the indictment itself will not render it fatally defective.' *State v. Crawford,* 66 Ia. 318; *State v. Gurlock,* 14 Ia. 444; *State v. Emeigh,* 18 Ia. 122; *State v. White,* 32 Ia. 17. This being a mere clerical error, apparent upon the face of the indictment, the defendant was not prejudiced by allowing the correction."

In *State v. McDaniel,* 94 Mo. 301, the court enforced a statute providing that no indictment shall be deemed invalid for stating the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day, or on a day that never happened. The rule was stated thus: "An indictment for murder which charges the assault and wounding to have occurred on the twenty-fifth day of December, 1886, from the effects of which the deceased died on the twenty-fifth day of December, 1885, is not fatally defective. The mistake is merely clerical, is cured by the statute (R. S. 1879, sec. 1821), and should be disregarded."

In *Conner v. State,* 25 Ga. 515, the presentment was dated September term, 1857, and charged that the offense was committed December 15, 1857, and the court said:

"Have not all the courts, both in England and in this country, settled it so long ago, that the memory of man runneth not to the contrary, that while some day must be stated, any other may be proven? Who does not see, that if it be immaterial to prove the day as charged, that no day or an impossible day will do just as well? But it will be replied, that it never was decided, but that the time charged must be before the accusation is preferred. And I concede this to be so, at least for the purposes of the argument. But let us look at the reason of the thing. Suppose the day be laid subsequent to the finding of the grand jury; it is the same in effect as stating an impossible day, as the fortieth of May, and if it be correct that any day within the statute of limitations and before indictment found will suffice, it is quite clear that no day, or one that is impossible, will do just as well."

In *State v. Pierre*, 39 La. Ann. 915, it was decided: "An immaterial and impossible date in an indictment may be corrected at any time; particularly when the date is not of the essence of the offense charged."

In modifying the rules of the common law on this subject the criminal code of Nebraska goes further than that of most of the states in which the decisions cited were rendered. To give effect to the changes which the legislature of this state made in the rules of the common law, it seems to me to be necessary to hold that the information as originally filed in the district court in the present case was sufficient to support a conviction without amendment or correction. If I am correct in this conclusion, it follows that the amendment inserting in the information "1909" instead of 1910 was immaterial, and that there was no error in refusing a postponement because of the change.

2. As I view the law, the majority opinion places too many restrictions around the engaging of private counsel to assist in criminal prosecutions. The proper solution of this question must rest upon the construction of the statute relating to the powers and duties of county at-

22

torneys. In 1885 the legislature passed an act containing the following provisions:

"It shall be the duty of the county attorney to appear in the several courts of their respective counties and prosecute and defend, on behalf of the state and county, all suits, applications or motions, civil or criminal, arising under the laws of the state, in which the state or the county is a party or interested. * * *

"The county attorney may appoint one or more deputies, who shall act without any compensation from the county, to assist him in the discharge of his duties; provided, that the county attorney of any county may, under the direction of the district court, procure such assistance, in the trial of any person charged with the crime of felony, as he may deem necessary for the trial thereof, and such assistant or assistants shall be allowed such reasonable compensation as the county board shall determine for his services, to be paid by order on the county treasurer, upon presenting to said board the certificate of the district judge before whom said cause was tried, certifying to the services rendered by such assistant or assistants." Laws 1885, ch, 40, secs. 2, 6; Comp. St. 1885, ch. 7, secs. 16, 20.

It is matter of common knowledge that the officers of the executive department of the state government, in the enforcement of the criminal laws, have construed the foregoing statutory provisions to allow the county attorney such assistance as he believes to be necessary, if obtained by him with the consent of the court and without expense to the county; and such assistance, if allowed by the judge of the district court without objection from the county attorney, has not been regarded as a violation of the statute. This construction is not unreasonable. It does not deprive accused of any right. The statutory provisions quoted show that the county attorney has ample control of criminal prosecutions. As the representative of the state he may exclude at any time an assistant who abuses his privileges or otherwise misbehaves. The trial

court has authority to protect the defendant from all improper acts of any attorney representing the state. It ought to be assumed that a judge of the district court, in presiding in his own tribunal, will be anxious about proper decorum and the due administration of justice. It should not be presumed that a trial judge will fail to observe and repress improper conduct of counsel for the state, whether it grows out of excessive zeal, malice, hope of reward, or professional vanity. The construction which gives sanction to the rulings of the trial court in this case has been followed by the prosecuting officers of the executive department of the state government with the approval of the district courts since the statute was passed in 1885. While the sections containing the provisions under consideration have been amended from time to time, the provisions themselves, construed and applied as already stated, have remained unchanged during all these years. The question should therefore be determined according to a doctrine recently stated in the following language: "When a statute has for nearly 40 years been practically construed by the officers whose duty it is to enforce it, and has during that time been several times re-enacted by the legislature in substantially the same terms, such construction will be regarded as adopted by the legislature, although the language of the statute would indicate a different meaning." *State v. Sheldon,* 79 Neb. 455.

For these reasons, I am constrained to recede from the construction adopted in the former opinion.

3. I am unwilling to say that the garments worn by the victim of the homicide at the time of his death were incompetent for every purpose in proving the state's case. In my judgment the record does not establish the correctness of that proposition. "If the evidence offered be legally admissible for any purpose, an objection to such evidence should be overruled." *Carleton v. State,* 43 Neb. 373. Competent evidence bearing on an issue cannot be excluded from the jury because it may incidentally arouse

their prejudices. *Missouri P. R. Co. v. Palmer*, 55 Neb. 559. If this were not the law, the shocking atrocity of the homicide in this case would prevent a conviction. I think the majority opinion attaches too much importance to the rulings admitting the garments in evidence, when more revolting proofs of the crime are considered. Unless an assignment of error not discussed is meritorious, the judgment, in my opinion, should be affirmed.

LETTON, J., concurs in dissent.