# CASES DETERMINED

BY THE

# SUPREME COURT

OF

## THE STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1885.

THE STATE v. WILSON, *Appellant.*

1. **Criminal Practice** : INSTRUCTIONS. It is the duty of the court to instruct the jury with reference to the evidence in the case and where the evidence in a criminal trial all tends to prove one offence, instructions should not be given as to a different one.

2. ——— : ———. The application of the above rule by the trial court in refusing an instruction for murder in the second degree on the trial of one on an indictment for murder in the first degree approved.

*Appeal from Lafayette Criminal Court.*—HON. JOHN E. RYLAND, Judge.

AFFIRMED.

*A. J. Hall, William Young* and *R. A. Hicklin* for appellant.

The court committed error in refusing to give an instruction on murder in the second degree. *State v. Banks,* 73 Mo. 592 ; *State v. Wilson,* 85 Mo. 134.

[13]

*B. G. Boone*, Attorney General, for the state.

The evidence did not authorize an instruction on murder in the second degree. In reversing the case before, the court did not hold that the trial court had erred in failing to give an instruction for a lower grade of homicide than charged in the indictment, but that " the instructions given recognized and allowed a finding in a lower degree than murder in the first degree, but failed to define the lower grade of the crime."

*John S. Blackwell* also for the state.

(1) There was no evidence authorizing an instruction to be given in this case for murder in second degree, and it is not error to refuse to give an instruction for murder in the second degree where the evidence does not show the commission of that grade of offence. *State v. Collins*, 81 Mo. 652. (2) Instructions should be based on evidence, and if the evidence made out a case of murder in the first degree, on the first trial of this case, as declared by this court, and if the evidence be the same or stronger now than on the first trial, then an instruction for murder in the second degree, or for any less offence was improper. *State v. Little*, 67 Mo. 624; *State v. Bailey*, 57 Mo. 131; *State v. Harris*, 59 Mo. 550. (3) Where the evidence shows that the offence was either murder of the first or second degree, it is not error to refuse instructions as to manslaughter. Then it must and does follow, in reasoning from the same legal principles and authorities, that where the evidence plainly shows (as it does in this case, and as has twice been found by the trial court, and once found and emphatically declared by this court) that the offence was murder of the first degree, it was not error to refuse an instruction for murder in the second degree. *State v. Snell*, 78 Mo. 240 ; *State v. Kilgore*, 70 Mo. 546 ; *State v. Starr*,

. 38 Mo. 270 ; *State v. Schoenwald*, 31 Mo. 147 ; *State v. Jones*, 79 Mo. 441.

NORTON, J.—The defendant was tried at the October term, 1885, of the circuit court of Lafayette county, and convicted of murder in the first degree for killing one Jennie Standford, from which he has appealed. This cause was before us at our last April term on a like appeal from a like judgment of conviction, and was reversed upon the ground that the court gave an instruction recognizing the right of the jury to find defendant guilty of some grade of homicide below murder in the first degree. There was nothing said in the opinion as to the grade of homicide below murder in the first degree to which the evidence might apply ; but the opinion contains the following language : ' " The crime of which defendant stands convicted, if testimony to that effect from all the witnesses except defendant be taken as true, and the nature, number and direction of the gunshot wounds be considered, it was an atrociously brutal murder, without palliation or excuse. The testimony of the defendant, in some particulars, tended to show circumstances extenuating the offence ; but when his whole testimony is examined, no possible doubt can arise as to the existence of his guilt in the degree affirmed by the verdict of the jury." *State v. Wilson*, 85 Mo. 134. Upon the cause being remanded and coming up for trial, the criminal court eliminated and did not give the instructions condemned by this court in its opinion, but only gave instructions relating to the crime of murder in the first degree, and refused to instruct the jury as to murder in the second degree, and the refusal of the court to give this instruction is the only ground of error relied upon by counsel to reverse the judgment.

The evidence upon the second trial is substantially the same as that given on the first trial, except on the second trial the case of the state was strengthened

by the evidence of George Bullard, who was not ex-
amined as a witness on the first trial and who testi-
fied that on the evening before the killing, or at least
within two or three days before the occurrence he
heard defendant say: "Jennie, the damned bitch,
had gone back on him; that he had one hundred and
fifty dollars and was going to leave the county and if
the damned bitch didn't behave herself he would
shoot her." With the opinion of this court before the
trial judge as a guide for him in the trial, though re-
versed because of an instruction being given in the
former trial, recognizing the right of the jury to find
the defendant guilty of some other grade of homicide
than murder in the first degree, without *stating the
grade of homicide to which this evidence applied*,
inasmuch as this court in the opinion reversing
the judgment in the former trial did not intimate or
suggest any grade of homicide below murder in the
first degree which the evidence tended to establish,
and inasmuch as the trial judge had to look to the
opinion for guidance in conducting the trial, and
looking at it saw that this court, after considering the
whole evidence of defendant, declared that no possible
doubt could arise as to the existence of defendant's guilt
in the degree affirmed by the jury, what else could the
trial judge do but to confine the attention of the jury in
his instructions to the crime of murder in the first degree,
that being the crime of which we said from the whole of
his evidence there could be no possible doubt of his
guilt? Suppose the court had ignored this declaration,
and given an instruction for murder in the second degree,
and the defendant had been convicted and appealed to
this court, could he not have relied confidently on the
case of the *State v. Ross & Phillips*, 24 Mo. 489, where
an instruction was given for murder in the second de-
gree, and Ross was convicted of murder in that degree,
from which he appealed? Scott, Judge, said that it was

The State v. Wilson.

no case for murder in the second degree; "For there can be no doubt, unless we stultify ourselves and refuse to permit our judgments to be influenced by considerations which govern all the rest of mankind that Philips intended to kill Watson. * * * It is true the jury alone could determine the fact of intention. * * * But in matters of this kind the court should not by its instructions invite a doubt when nothing is so unreasonable as to suppose that any can exist. As the case was not one for an instruction on the law concerning murder in the second degree, and as defendants were tried for murder in the first degree it may be thought defendants were not prejudiced by such instruction, This idea cannot be sustained. We cannot say whether defendant should have been found guilty of murder as charged or not. The jury was improperly led away from that issue by an instruction which induced their conviction of the crime of murder in the second degree. They complain of that conviction and have a right to have the judgment reversed if it has been obtained by undue means."

The undisputed evidence in the case shows that the night before deceased was shot and killed, she and defendant had a quarrel in which threats were made by the defendant against the deceased, and that two or three days before the tragedy defendant in speaking of deceased said he had one hundred and fifty dollars and was going to leave the country, and if the damned bitch didn't behave herself he would shoot her. The undisputed evidence shows that defendant, who was head cook in the Virginia hotel, on the morning deceased was killed, which occurred about seven or eight o'clock, before breakfast was finished, told the assistant cook that she would have to get dinner, that he was going to leave; he bid all the help about the house goodbye, saying he was going to the post office, but started off

west in an opposite or different direction, and a short time after deceased was shot, defendant returned to the hotel, saying he had shot Jennie and if she was not dead she would die. The undisputed evidence also shows that he went directly from the hotel, after bidding the help goodbye, to the house where deceased was staying, enquired if she was there and on being told that she was in bed asleep in the little room adjoining the large room, he went into the room where she was and closing the door behind him ordered her to get up, and on her refusal he said: "God d—n you; I have got it in for you and will do you up," that a pistol shot was then heard and deceased ran out in her night clothes through the large room, on to the perch and out to the gate, hallooing and screaming; that defendant pursued her and fired two shots at her as she ran; that when the last shot was fired, deceased immediately fell to the ground, just outside the gate, and died, where she fell, in a few moments, without speaking. The physician who examined her body testified there were three gun shot wounds on her person, two of which were necessarily fatal, one of them being in the back. The above facts were established by several witnesses. Defendant, who was examined on his own behalf, did not dispute the fact that he pursued the deceased and shot at her twice while she was fleeing from him in her night dress. His account of what occurred after he entered the room where deceased was in bed is as follows:

"I went into the room. Jennie was in bed. I asked her to get up and go to my room with me; she said she would not and sat up on the edge of the bed with her feet on the floor. She had eighty dollars of mine which I had given her to keep for me; we were engaged. I said, 'I suppose our engagement is all over with;' she said 'yes, I have been playing you for your bottom dollar and I have got it and have no further use for you.' She refused to give me my money and said she would

burn it up first.   I said, ' yes, you threatened my life last night, did you mean it?'  She said ' yes, I meant it and I will do it now ; ' she ran her hand under the pillow pulled out a pistol and started towards me.   I sprang at her, wrenched the pistol from her hand and it went off.   I got the pistol from her, she stooped down as if reaching for something and I fired.   I don't know whether I fired again or not.   When I came out and saw Jennie lying there I knew what I had done, gave the pistol a toss, came up town and gave myself up."   On his cross-examination he said :   " I do not know what she was stooping for when I shot her ; don't know why I threw  the pistol away ; don't remember firing the third shot.   Can't tell why.   Can't remember what was done up to the time of shooting the second shot."   According to defendant's own evidence he had disarmed his victim, and shot her when she was in a stooping position and powerless to harm him.   He does not state that there was anything within her reach with which if she had even secured it, she could have hurt him.  Besides this the uncontradicted evidence is that deceased fled from him, that he pursued her with a deadly aim, shot her mortally in the back as she got to the gate, twenty-five feet from him, as if determined that she should not escape the fate which he said two or three days before should be hers.

The case is analogous to the case of *State v. Jones*, 79 Mo. 441, at least so far as the evidence of defendant given in his own behalf is concerned, and it was there held that the court properly refused an instruction for murder in the second degree.   In view of what is said in the case of the case of the *State v. Starr*, 38 Mo. 272 : " That it is the duty of the court to instruct the jury with reference to the testimony in the case, and when the evidence all tends to prove one offence, it is wrong to mislead the jury by giving instructions in  relation to a different one," we cannot see how the court  could have given  an instruction for murder in the second degree.   Two juries

have passed upon the guilt of defendant, the record shows that he was fairly tried and the verdict of the jury is fully sustained by the evidence, and perceiving no cause for interfering with the judgment, it is hereby affirmed, in which all concur.