The State v. Gilmore.

## THE STATE v. GILMORE, *Appellant.*

1. **Criminal Practice** : JURORS. Where in a criminal case two jurors on the qualified panel, but who were on neither challenge list, did not appear, it was not error for the court to fill the panel by calling two jurors from the regular *venire*, defendant having declined to challenge the two thus called and having waived his statutory right to additional time to make challenges.

2. ———— : WAIVER. A defendant can waive a statutory privilege.

3. ———— : OBJECTIONS TO EVIDENCE. Where the ground of objection to the admissibility of evidence is not preserved it will be presumed to be invalid.

4. **Criminal Law** : BRINGING ON DIFFICULTY : DOCTRINE OF SELF-DEFENCE : MURDER. Where a defendant in a criminal case provokes the difficulty or begins the quarrel with the purpose of taking advantage of the deceased and of taking his life and doing him some great bodily harm, then there is no self-defence in the case, however imminent the peril of the defendant may become in consequence of an attack made on him by the deceased, and where the defendant kills the deceased under such circumstances he is guilty of murder in the first degree. (*State v. Partlow*, 90 Mo. 608, *affirmed*).

5. ———— : ———— : ———— : MANSLAUGHTER. Where, however, although the defendant begins the quarrel or provokes the difficulty, yet if it is not done by the defendant with any felonious purpose and the deceased attacks the defendant and compels the latter, in order to save his own life, to take that of the deceased, the defendant will be guilty of manslaughter in the fourth degree. (*State v. Partlow*, 90 Mo. 608, *affirmed*).

6. ———— : ———— : ERRONEOUS INSTRUCTION, NOT REVERSIBLE ERROR. An instruction that if the defendant commenced the difficulty, or brought it on by any wilful act of his, or that he voluntarily and of his own free will and inclination entered into the difficulty, then there is no self-defence and the jury should not acquit on that ground, while erroneous, will not be sufficient ground for the reversal of the judgment where the evidence shows there was no self-defence in the case.

7. **Murder** : FELONIOUS INTENT. An instruction to the effect that " if A. shoots at B., and missing him kills C., it is murder because the law transfers the felonious intent from B. to the innocent who is slain," is correct.

The State v. Gilmore.

*Appeal from St. Louis Criminal Court.*—HON. J. C. NORMILE, Judge.

AFFIRMED.

*A. W. Alexander* and *D. Castleman Webb* for appellant.

*B. G. Boone,* Attorney General, for the state:

(1) The trial court committed no error in directing the sheriff to fill the panel by calling other jurors of the regular *venire* in the place of the absentees. It appears from the bill of exceptions that the two jurors thus called were in every way qualified to sit in the cause— defendant did not challenge them, either peremptorily or for cause. (2) No objection was raised to either of the new jurors; defendant expressly waived his right to the forty-eight hours, and the panel was filled before he was required to make his peremptory challenges. *State v. McCarron,* 51 Mo. 27 ; *State v. Klinger,* 46 Mo. 224 ; *State v. Waters,* 62 Mo. 196. (3) The testimony of the witness Oldfield, regarding defendant's sworn statement before the coroner, was competent. Any acknowledgment or admission of the accused in regard to the matter was clearly competent for the state to prove, unless a confession obtained by influences of hope or fear. This statement of the prisoner was in the nature of a judicial confession, made by him voluntarily, after having been duly apprised of his rights, under oath, before an officer authorized to administer oaths, and who was then making a statutory investigation of the cause of Stanton's violent death. R. S., 1879, secs. 5136, 5141, 5142, 5144. Nor was the accused in the least prejudiced by the admission of the testimony, but it was rather to his advantage ; his whole statement being proven, and all the circumstances extenuating the

homicide, as claimed by him, thus presented before the jury for their consideration. *State v. Hayes*, 78 Mo. 307, 319. (4) The instructions fully covered the law of the case; were in the form so often approved by this court, and correctly declared the principle regarding an unintended result. *State v. Jump*, 90 Mo. 171; *State v. Montgomery*, 91 Mo. 51.

SHERWOOD, J.—For shooting and killing Miles Stanton, in the city of St. Louis, with a pistol, on the twelfth of January, 1886, the defendant was indicted for murder in the first degree, at the following March term of the St. Louis criminal court. After several continuances of the cause, defendant was put upon trial at the May term, 1886. A panel of forty-seven qualified jurors was obtained from the regular *venire*, and appellant was allowed the statutory forty-eight hours in which to make his challenges. At the close of that period the state and defendant had prepared their challenges, but they were not submitted to the court. Upon a call of the panel of forty-seven, two of the jurors failed to respond. Neither of these jurors was on the challenge lists. The court thereupon issued attachments for the absentees, and the returns thereon showed that one of the jurors had left the city, and the other had met with an accident which confined him to his bed. The court directed the sheriff to call two jurors from the regular *venire* in place of the absent ones, who were then examined upon their *voir dire*, and found to be qualified. This was done over the objection of defendant. The court then asked defendant if he desired an additional forty-eight hours in which to make challenges, but he waived his statutory privilege, and thereupon the state and defendant submitted their challenges to the court, and the trial panel was selected, containing the two jurors who had been called in place of the absentees, and who had not been challenged by

either side, defendant saving an exception to the action of the court.

The trial resulted in a conviction of defendant of murder in the second degree, the punishment being fixed at imprisonment in the penitentiary for the term of fifty years. After unsuccessful motions for new trial and in arrest, sentence was pronounced on July 2, 1887 ; stay of execution was had until July 25, 1887, at which time defendant was committed to the penitentiary, where he now is.

The testimony on the part of the state tended to show the following : Shortly after midnight of January 11, 1886, Gilmore, one Mooney, and several others met on the street and together went to the saloon of one Leahy, on Sixth and Clark avenue, where they continued drinking and singing songs until about three o'clock in the morning. About one o'clock, Stanton ( the deceased ) came into the saloon with a party of friends. Introductions followed and the two parties drank and sang together. Gilmore and Stanton had never met before. In the course of the entertainment, Gilmore asked Mooney to pay him some money which Mooney owed him, the sum being about five dollars. Mooney said he had no money but would pay to-morrow. Gilmore replied that Mooney's to-morrows were slow in coming and suggested that he should borrow the money from the barkeeper, appealing to the barkeeper at the same time to advance the money to Mooney. The barkeeper expressed his readiness to let Mooney have two dollars, or to pay Gilmore two dollars for Mooney, but Mooney said that "Gilmore was full enough now" and could wait until morning, and told the barkeeper to give it to Gilmore in the morning. There was a good deal of talk between the two about it, and then Gilmore left the saloon for about fifteen minutes. When he returned, he renewed his demand on Mooney for the money, and on

Mooney's refusal to pay, exclaimed, "You son-of-a-bitch! I'll make you pay me!" at the same time drawing a seven-barreled revolver from his pocket which he began discharging at once. One bullet struck the mirror behind the bar, three struck Mooney, in the wrist, thigh, and ankle, and another struck Stanton, who was standing at the counter with his back to Gilmore, lodging in his heart and killing him almost instantly. One of the party disarmed Gilmore, but not until he had emptied his revolver, and then he ran out of the saloon and was arrested about three blocks away by two officers, who took him back to the saloon, where they found Stanton dead. Gilmore remarked to the officers that he was sorry it was not Mooney he had killed instead of Stanton. There was also testimony that between two and three o'clock Gilmore entered a saloon, a block away, and obtained his revolver from the barkeeper there, with whom he had left it previously, saying that he was going out to "Kerry Patch" that night and feared some one might attempt to "slug" him.

On the part of the state in chief, one Oldfield was sworn as a witness, who testified that he was a stenographer employed by the coroner to take notes of the inquests; that he took short-hand notes of the testimony at the inquest of Stanton; that Gilmore was present there; that the coroner informed Gilmore of his right to make a statement or not regarding the killing, as he chose, and that his statement might be under oath or not, as he chose; that Gilmore then and there made a voluntary statement under oath, to the effect that he had had a dispute with Mooney about the money; that he did not intend to shoot Stanton, who was a perfect stranger to him, and that he did not intend to kill Mooney, either, although he might have said he did while he was drunk that night. This testimony of Oldfield's was admitted by the court over the objection of defendant.

Defendant testified in his own behalf and stated that during the dispute with Mooney about the money, Mooney said, "You son-of-a-bitch, I won't pay you anything!" and snapped his fingers in Gilmore's face, and then made a movement down as though he was about to draw a weapon, when he (Gilmore) drew his revolver and commenced firing, but without intending to kill Mooney or any one else; that he had gotten the pistol between nine and ten o'clock that evening before he met Mooney, and that, at the time he was seen to leave the saloon during the dispute, he had only gone out to the water-closet.

The court instructed the jury as to murder in the first degree, murder in the second degree, manslaughter in the fourth degree, and self-defence, declaring that the principles of law in each applied to the killing of Stanton as if Mooney had been the victim. The instruction as to manslaughter was based upon the unintentional killing of Stanton.

I.  There was no error in the action of the court in regard to filling the panel by calling other jurors in the place of the absentees; and the two who were thus called were unexceptionable, and were not challenged either peremptorily or for cause, and those absent were not on either of the challenge lists; and besides, the court offered to give the defendant an additional forty-eight hours in which to make his challenges; but this offer was declined. This action of the court placed the defendant in just as good a situation as he would have been had the two jurors failed to absent themselves; and this was all he could justly claim. The privilege of having forty-eight hours in which a prisoner is to make his challenges is a mere statutory one, and which he may waive. *State v. Klinger*, 46 Mo. 224; *State v. Waters*, 62 Mo. 196. The panel being filled in a proper manner, the two jurors first called, being unavoidably absent, additional time being granted to defendant to

make further challenges, the case stood precisely as if the two absentees had died pending the time challenges were being made.

II. So far as concerns the testimony of Oldfield, the ground of the objection to its admission is not preserved, and the presumption is, therefore, to be indulged that the objection taken to its admissibility was invalid, and this presumption should especially be indulged when such testimony is in certain circumstances competent as the voluntary admissions of the defendant.

III. The instructions, speaking of them in a general way, were correct; there was one of the instructions, however, the correctness of which cannot be endorsed; it was this:

"If the jury find, from the evidence, that the defendant and Thomas Mooney had an altercation which resulted in the death of Miles Stanton, and that defendant commenced the difficulty, or brought it on by any wilful act of his, committed at the time, or that he voluntarily, and of his own free will and inclination, entered into the difficulty, then there is no self-defence in the case, and the jury should not acquit on that ground. And in such case, it makes no difference how imminent the peril may have been in which the defendant was placed during the difficulty."

It is not true, as asserted in this instruction, that there is no self-defence in a case where a defendant begins a quarrel or voluntarily enters into the same. It is only true where he does so with the view to take advantage of the quarrel thus begun and to slay his adversary, or do him some great bodily harm. Whenever this is his purpose, he loses his right of self-defence, and if forced to slay his adversary, even though to save his own life, his act becomes murder in the first degree, and nothing less. Not so, however, if he began the quarrel or voluntarily entered into it with no such murderous or felonious purpose in view. In such case, the

law measures the grade of his crime by the grade of his intent, and while it will not, because of his being in fault, exonerate him altogether, yet it will take into consideration his intent in beginning the quarrel, or voluntarily entering into the same, and thus considering it, will cut down his offence from what would otherwise be the highest grade of homicide, into manslaughter in the fourth degree.

This whole subject was discussed in *Partlow's case*, 90 Mo. 608, and the distinction just mentioned fully approved, and this was done after a thorough examination of the authorities. *Partlow's case* was approvingly followed in *State v. Berkley*, 92 Mo. 41, and it is unnecessary to go over the same authorities again. But it may be safely affirmed that, though in some cases we find the unqualified assertion that if the defendant brought on the difficulty, etc., etc., then there is no self-defence in the case, etc., yet from the Year Books down to the present time, no court or text-writer can be found willing to come out and flatly assert that there is no distinction in the guilt of a person who brings on a difficulty in order to furnish a pretext for wreaking his malice, and having thus brought it on, carries out his previous purpose, and slays his adversary in defence of his own life; and in the guilt of a person who, without such prior purpose, brings on a difficulty, in which to save his own life, he takes that of his adversary. On the contrary, wherever the subject has been examined, wherever it has been analyzed by courts or text-writers, the result reached has invariably been substantially identical with that announced in *Partlow's case, supra.*

In quite a recent case in Illinois, the defendant asked the court to give the following instruction: "The court instructs the jury, that if they believe, from the evidence, that the defendant was assaulted by the deceased in such a way as to induce in the mind of the

defendant a reasonable and well-grounded belief that he was actually in danger of losing his life or of suffering great bodily harm, then he was justified in shooting the deceased, whether the danger was real or only apparent. Actual or positive danger is not indispensable to justify self-defence. The law considers that men, when threatened with danger, are obliged to judge from appearances, and determine therefrom as to the actual state of things surrounding them ; and in such cases, if persons act from honest conviction, induced by reasonable evidence, they will not be held responsible criminally for a mistake as to the extent of the actual danger." The court refused to give the instruction as asked, but added the following modification : "In connection with this instruction the jury are further instructed, that if they find, from all the evidence, that the defendant sought for and attempted to provoke a personal difficulty with the deceased, Vigo, and that he, and not Vigo, was the first assailant, or that the defendant being the first assailant, he had not really and in good faith endeavored to decline any further struggle before the mortal shot was fired ; or if they believe, from the evidence, that the defendant sought for and attempted to provoke a personal difficulty with the deceased, with the intent to kill him if he did make the first assault, then in neither of such cases would the defendant be justified in killing the deceased upon the theory of self-defence because of such assault by the deceased, Vigo, before the fatal shot was fired ; and if the defendant, without any previous malice against the deceased, and with no intent to take his life, did seek for and provoke a personal difficulty with the deceased which resulted in such assault being made by the deceased; that the defendant, at the time he so sought for and attempted to provoke such personal difficulty, did not expect such conduct of his to result in such assault by the deceased, but that it did result in such assault being made, and if defendant

thereupon with his revolver fired the fatal shot, as stated in this instruction, then such act of defendant in so killing Vigo cannot be justified upon the ground of self-defence, and that while such would not be murder, it would amount to manslaughter." And concerning this the court said : " We perceive no error in the modification. Under the evidence in this case we are of opinion that the modification was clearly within the rule announced in *Adams v. People*, 47 Ill. 378." *Finney v. People*, 108 Ill. 519.

And it is wholly immaterial what the right of a defendant is called which gauges his crime—and his punishment by his intent, and because of a lack of murderous intent on his part, cuts down his offence and his punishment to that of manslaughter. In some jurisdictions, such right would be termed the right of *imperfect self-defence*. But it is wholly immaterial what the principle is christened, or how its name is entered upon the parish register ; all that I ask is, that its existence be not utterly ignored, as was done in the instruction being criticized. If its existence be conceded then its application is quite easy, as I will now endeavor to show. If the principle I have announced, and the distinction I have endeavored to make, were formulated, this instruction would express the idea and the principle : If the jury believe from the evidence that the defendant provoked the difficulty or began the quarrel with the purpose of taking advantage of the deceased and of taking his life, or of doing him some great bodily harm, then there is no self-defence in the case, however imminent the peril of the defendant may have become in consequence of an attack made upon him by the deceased ; and if, in such circumstances, the jury believe that the defendant killed the deceased, then he is guilty of murder in the first degree. *State v. Hays*, 23 Mo. 287 ; *State v. Packwood*, 26 Mo. 340. But although the jury believe from the evidence that

the defendant began the quarrel or provoked the difficulty with the deceased, yet if they also believe, from the evidence, that this was done by defendant without any felonious purpose, and that thereupon the deceased attacked him and compelled him, in order to save his own life, to take that of the deceased, still the law, while it will not entirely justify the homicide on the ground of self-defence, will hold the defendant guilty of no higher grade of crime than that of manslaughter in the fourth degree.

This, I believe to be a correct exposition of the law applicable to such cases, and one which would be readily understood by the jury. But though I hold the instruction in the case at bar to be faulty for the reasons already given, yet it does not follow that the judgment should be reversed because of the error the instruction contains. These are my reasons for this view: The defendant suffered no damage from the error, because there was *no evidence of self-defence* in the case ; *self-defence is an affirmative, positive, intentional act;* here, according to the defendant's own story, his act of firing his pistol was wholly *unintentional; a mere accident.* Again, at the time the defendant drew his weapon and fired, his danger was not imminent ; his adversary had drawn no weapon, and no weapon was drawn by him. The right of the defendant to defend himself did not arise until he had done everything in his power to avoid the necessity of shooting his adversary. If he could safely have avoided using his weapon, he was not justified in using it. *State v. Johnson*, 76 Mo. 121. The duty of the defendant was to retreat, or at least avoid proceeding to the last resort, to the exercise of the extreme right of self-defence, so long as was consistent with his own safety. There was no such fierceness of assault in this case as sometimes forbids retreat and justifies instantaneous action. 1 Whart. Crim. Law, sec. 486a; 1 Bish. Crim. Law, sec 872. Moreover, that there was

The State v. Gilmore.

no self-defence in this case is shown by the defendant's own conduct; he continued to shoot at his fleeing adversary, even after he had fallen to the floor. The physical facts in the present instance contradict the theory of self-defence, and are utterly inconsistent therewith. When this is the case, courts are not required to ignore such physical facts and give instructions not in harmony with them. *State v. Anderson*, 89 Mo. *loc. cit.* 332. This principle is exemplified in *Wilson's case*, 88 Mo. 13, where self-defence was also the plea and unsuccessfully interposed.

IV. Relative to the instruction in regard to shooting at Mooney, and killing Stanton, an innocent bystander, it only asserts the familiar principle that if A shoots at B, and missing him kills C, this is murder, because the law transfers the felonious intent from B to the innocent party who is slain. *State v. Payton*, 90 Mo. 220; *State v. Jump*, 90 Mo. 171; *State v. Montgomery*, 91 Mo. 52.

The defendant has not been represented by counsel in this court, but in obedience to statutory duty, the record has been examined and the result is, that the judgment should be affirmed. Black and Brace, JJ., concur.

NORTON, C. J., CONCURRING.—While I concur in affirming the judgment in this case, I do not concur, but dissent, from so much of the opinion as holds the following instruction to be erroneous, viz.:

"If the jury find, from the evidence, that defendant and Thomas Mooney had an altercation which resulted in the death of Miles Stanton, and that defendant commenced the difficulty, or brought it on by any wilful act of his committed at the time, or that he voluntarily, and of his own free will and inclination, entered into the difficulty, then there is no self-defence in the case, and the jury should not acquit on that

ground. And in such case it makes no difference how imminent the peril may have been in which the defendant may have been placed during the difficulty."

This instruction has been accepted by the bench as a correct exposition of the law in this state for nearly a half-century, and has received the sanction of this court in the following cases : *State v. Underwood*, 57 Mo. 50 ; *State v. Starr*, 38 Mo. 270 ; *State v. Linney*, 52 Mo. 40 ; *State v. Shoultz*, 25 Mo. 153 ; *State v. Christian*, 66 Mo. 138, 145 ; *State v. Hudson*, 59 Mo. 135, 138 ; *State v. Vansant*, 80 Mo. 69, 70 ; *State v. Jones*, 78 Mo. 327 ; *State v. Brown*, 64 Mo. 368 ; *State v. Peak*, 85 Mo. 190 ; *State v. Rose*, 92 Mo. 201, 207. The opinion, in condemning the instruction above quoted, in effect, overruled the principle enunciated in the cases cited. These cases establish the proposition that if A voluntarily provokes, by any wilful act of his, a difficulty with B, and voluntarily enters into the difficulty with a purpose to gratify his malice, by killing him, and does kill him, his crime would be murder, and nothing less. If, on the other hand, A commences a difficulty with B, or brings it on by any wilful act of his, and enters into it of his own free will and accord, with no purpose of taking B's life, still if, in the difficulty thus provoked, brought on, and entered into, he kills B, while he may not be guilty of murder, he is guilty of manslaughter in some degree to which the evidence in the case may apply. But in either case, whether the difficulty is sought, provoked, and voluntarily entered into, by A, with a felonious or malicious purpose to kill, or without such felonious purpose, there is no self-defence in the case, and he cannot be acquitted on that ground.

The principle announced in the instruction and so repeatedly approved by this court in the cases herein cited is an emphatic declaration to every citizen of the state, that if he violate the law in provoking a breach of the peace by seeking and bringing on a

The State v. Gilmore.

difficulty, and, voluntarily entering into the same, he takes the life of his adversary in the difficulty thus provoked and entered into, he will not be heard to justify or excuse himself on the ground of self-defence, and he must either suffer the penalty of murder if it appear that he brought on the difficulty for the purpose of killing his adversary and provoked an attack as a cover for such purpose; or if he brought on the difficulty without any such felonious or malicious purpose, that he must, if he kill his adversary, suffer the penalty of some grade of manslaughter which the evidence may show it to be. In other words, the principle announced in the instruction is a command to every citizen to keep the peace, and also warns him who breaks it by provoking and entering into a difficulty with another and killing him, that he cannot escape punishment on the ground of self-defence, for some grade of homicide, either for murder or manslaughter, in some of the degrees which the evidence and circumstances attending the killing may show it to be. The doctrine of the instruction and of the cases above referred to is sound and conservative in principle, promotive of good order, and conducive to the preservation of the peace. It affords protection to the law-abiding and threatens certain punishment to the law-breaker, and I am unwilling to see it shaken in its integrity one jot or tittle, or so modified as either to afford an avenue of escape to the lawless, or so as to withdraw from the peaceful law-abiding citizen any of the protection which it affords him in the quiet walks and pursuits of life.

Crime, as shown by the records of this court and otherwise, is so enormously on the increase as to demand a strict adherence to every principle of law established to punish it, and I am unwilling to give my sanction to a departure from the principle announced in the instruction, and which has so often received the

sanction of this court. The opinion, if I understand it correctly, asserts that where a person wilfully brings on a difficulty, and enters into it of his own accord and kills his adversary, that he cannot justify the act at all. This being so I am at a loss to see how the instruction in question, which declares that, when a person kills another under the circumstances above stated, there is no self-defence in the case, and he cannot justify the killing on that ground, can be condemned. If the killer, under such circumstances, cannot justify the act on any ground, *how is it possible* that an instruction can be erroneous which declares that he cannot justify on a particular ground, viz., self-defence ? Judge Ray concurs with me in the views above expressed.

### SEPARATE OPINION.

SHERWOOD, J.—Under some' of the former rulings of this court which are cited in the above dissenting opinion, the rule, that if the accused " brought on the difficulty or voluntarily entered into the same, that then there was no self-defence in the case, and if death ensued, that then the accused was guilty of *murder*, no matter *what his intention* may have been in bringing on the difficulty," etc., was the iron rule which was laid down by this court,—a rule which was unflinchingly applied to *every case of homicide*, which was preceded by a quarrel, however sudden or however great the provocation. This statement is fully borne out by the cases cited in the dissenting opinion, and, therefore, the statement made therein, to the contrary, finds no support in those cases. It was because of the fact that all cases of homicide were treated *precisely alike* in this particular, that induced a minority of this court to question and to combat the monstrously unjust rule in *Culler's case*, 82 Mo. 623, and finally induced a majority of this court to

overthrow that rule in *Partlow's case*, 90 Mo. 608, in *Berkley's case*, 92 Mo. 41, and in the present one.

In *State v. Christian*, 66 Mo. 138, the rule is laid down by Norton, J., with emphasis, that the court should decline to instruct the jury as to *any degree of manslaughter*, where every fact in the case goes to show that the defendant sought and brought on the difficulty. Similar enunciations can be found scattered through our reports ever since the sound and wholesome principle laid down in *State v. Hays*, 23 Mo. 287, and *State v. Packwood*, 26 Mo. 340, was departed from in subsequent cases; where the question of *intent* in cases of homicide was discarded as wholly immaterial, if the accused "brought on the difficulty." In view of these later decisions, the statement made in the dissenting opinion, as to the rule of law prevailing in this court in reference to the effects and consequences of bringing on a difficulty, is somewhat singular.