## THE STATE v. STILTZ, *Appellant*.

1. **Criminal Law :** HOMICIDE : INSTRUCTIONS : MURDER : MANSLAUGHTER. The evidence in this case examined and held not to make out a case of manslaughter in the second degree, but of murder in the first or second degree, manslaughter in the fourth degree, or self-defense.

2. ———: SELF-DEFENSE : MANSLAUGHTER IN FOURTH DEGREE. The case of the *State v. Gilmore*, 95 Mo. 554, as to the proper formula for instructions on the law of self-defense and manslaughter in the fourth degree, in a case like this, followed and affirmed.

*Appeal from Hickory Circuit Court.*—HON. W. I. WALLACE, Judge.

REVERSED AND REMANDED.

*A. S. Smith, Chas. S. Essex, J. H. Childers* and · *B. J. Emerson* for appellant.

(1) The court erred in overruling the defendant's objections to the testimony of witnesses, M. C. Wheeler and Shade Lacy, relative to what transpired in the morning and immediately after noon. The shooting for which defendant was indicted occurred between sundown and dark, and the testimony objected to had no connection with the shooting, and was not a part of the *res gestae. State v. Evans,* 65 Mo. 574; *State v. Swain,* 68 Mo. 605; *State v. Walker,* 78 Mo. 380. (2) The court erred in giving instruction number eight for the state. *State v. McDaniel,* 94 Mo. 301; *State v. Partlow,* 90 Mo. 608; *State v. Gilmore,* 95 Mo. 554. (3) The error of the eighth instruction was not cured by giving instruction number four for the defendant. Dissenting opinion of SHERWOOD, J., in *State v. McDaniel, supra,* and authorities there cited. (4) Having given instruction number eight for the state the court should have given number eleven asked by defendant. *State v. McDaniel, supra.* (5) Instruction number eight for the state was contradictory of instruction number four for defendant, and practically threw the burden upon defendant to show that he did not voluntarily enter into the difficulty, and was misleading to the jury.

*B. G. Boone,* Attorney General, for the State.

(1) The court did not err in overruling defendant's motion to discharge the special panel. *State v. Matthews,*

88 Mo. 121; *State v. Gleason*, 88 Mo. 582. (2) Instruction numbered eight for the state is in the usual form and in like form was given in *State v. Gilmore*, 95 Mo. 554.

BRACE, J.—The defendant was indicted by the grand jury of Hickory county for murder in the first degree, for killing one Thomas Moore. Upon his trial in the circuit court of that county, at the May term thereof, 1888, he was convicted of murder in the second degree and sentenced to ten years imprisonment in the penitentiary. His motion for a new trial and in arrest of judgment having been overruled, he has brought his case here by appeal.

I. After a careful examination and consideration of the objections urged against the action of the court in refusing to discharge the panel of jurors selected to try the case, and in accepting and rejecting evidence on the trial, we find nothing in them that would warrant a reversal of the judgment.

II. The evidence of the first witness for the state, and of the first witness for the defendant, will sufficiently present the facts connected with and attendant upon the homicide to enable us to determine the questions raised upon the instructions.

For the state M. C. Wheeler testified: "I am acquainted with defendant and Moore; remember the difficulty between them at Quincy on Saturday morning; about ten o'clock, I and Moore and L. Stiltz and Wm. Wheeler and Johnson went to the barn to have a game of cards; had a few games; Stiltz claimed he wanted to quit; Moore said Stiltz always jumped the game when he got a little advantage; Stiltz said, 'It don't matter; I'll quit.' They got into dispute. Stiltz ran to back of barn and got rock. Wm. Wheeler stopped the racket; we went to town; met in town; we were there awhile; returned to barn about two or three o'clock; I and George Nowel went to barn; Moore and Stiltz were

quarrelling; Nowell and I went in barn; Moore said, 'Come and see the fair thing.' We went out. Geo. Nowell said, 'I'll do the fighting if any is to be done.' We got boys stopped ; a few minutes after that Moore went walking along ; stooped down and took hold of a rock ; don't know whether he picked it up or not; Tom walked toward Stiltz ; Stiltz said : 'Haven't we settled that?' Moore said : 'Have I said anything to you?' Stiltz said : 'What did you pick up that rock for?' Tom said : 'I did not pick up a rock.' Stiltz said : 'You are a damned liar ; you did.' When Stiltz called him a d——n liar, Tom started toward him ; Stiltz just raised his pistol out of his pocket, just so it could be seen ; then the boys crowded up and stopped racket ; the next I heard was some one of them called d——n liar ; Moore said : 'Did you call me a d——n liar?' Stiltz said : 'Yes, you are a d——n black son of a bitch.' Tom said : 'I won't take that ; would you, boys?' and started towards him ; when he got up towards Stiltz, the shot was fired ; Geo. Nowell said : 'Lyman, you've done something you'll hate all your life ;' Stiltz said : 'I don't give a d——n.' Moore said : 'I'm shot.' Moore and Stiltz were five or six feet apart ; Geo. Nowell was standing between parties, facing Stiltz ; Stiltz shot over left shoulder of Nowell ; I was ten or twelve feet from Moore ; I never saw anything in Moore's hand at time he was shot ; I was in a drug-store after first and before second difficulty ; Lyman said : 'If Moore fools with me any more he'll get hurt.' I did not see Stiltz have any weapons ; after Moore was shot, they took him out to his father's, I and others ; this all occurred in Hickory county, Missouri, at Quincy."

Cross-examination : "I don't know Moore's age ; suppose him twenty-four or twenty-five years of age ; I don't know defendant's age ; have known him ever since he was a small boy ; he was under age at time ; Moore would have weighed one hundred and sixty-five pounds ;

Stiltz would have weighed one hundred and thirty; was thirty-five or forty pounds difference in weight; Moore was a healthy, stout man; Moore was right smart quarrelsome when drinking; often occurred when drinking that Moore would get in difficulty; in morning some controversy arose; Moore accused him (Stiltz) of jumping game; Stiltz spoke in pleasant manner; can't say how Moore spoke; Stiltz said: 'I am going to quit;' Moore went to cursing; Lyman got rock; Moore was swearing; they went to town; I did not see Moore get rock and put in his pocket; it was about fifteen minutes before shooting that Moore stooped to pick up rock with right hand; can't say whether he got rock or not; there were rocks lying around there; don't think Moore had overcoat on; he did not have rock in hand at time of shooting; he might have had one in pocket, don't know; I saw Moore drink two or three times; I was noticing Stiltz at time of firing; Moore was going towards Stiltz the last I noticed him before firing; I didn't see Moore's hand at time of firing."

For the defendant, John Ferguson testified: "Jim Murphy, Tom Brown and myself were going down to the carding machine; Jim Murphy was going home and asked me to go down to the foot of the hill with him; as we got opposite the old Phillip and Carter barn, Lyman Stiltz ran out of the barn crying, followed by Tom Moore. Stiltz says to Moore: 'You have been running over me all day;' Moore said, 'You are a damned liar;' Stiltz replied; 'You are a damned liar if you say you have not been running over me;' Jim Murphy, Tom Brown and myself got the row stopped and started off with Stiltz; we got off about twenty feet and we happened to look back and saw Tom Moore picking up a rock which he put in his left-hand overcoat pocket; Stiltz saw him and said: 'Better pick up another; one is not enough to whip a boy like me with;' Moore says: 'I will, and will be damned apt to keep

them ;' and Moore says to Stiltz : 'If you say I have been running over you all day, you are a damned liar;' Stiltz said : 'I thought we had agreed to drop this;' Moore says : 'If you say I have been running over you all day, you are a damned liar;' Stiltz says : 'If you say you ain't been running over me, you are a d—n lying son of a bitch,' and Moore, taking a rock out of his pocket, started towards Stiltz with the rock in his hand ; just as they had about got together, Jim Murphy, Tom Brown and Geo. Nowell started to get in between them ; as Moore went to throw the rock one of them grabbed Moore and the other Stiltz ; Moore tried to throw the rock and Stiltz jerked out his pistol and fired over or near the shoulder of the one holding him and shot Moore in the mouth ; Geo. Nowell and myself started off with Stiltz."

The court instructed the jury on murder in the first and second degrees and manslaughter in the second degree, and on self-defense. The instructions, except those hereinafter referred to, were in proper form and applicable to the facts in the case.

III. We find no evidence in the case upon which to base the instruction given on manslaughter in the second degree ; there was not only no evidence upon which to predicate the theory that the defendant shot the deceased, "without a design to effect death, but in a cruel or unusual manner," but all the facts and circumstances negative such an idea, and the defendant himself testified : "I shot because he was coming at me with a rock and I knew he would hit me; I did it in self-defense."

IV. On the evidence proper instructions on the law of self-defense and on manslaughter in the fourth degree ought to have been given. The court failed to give an instruction on that degree of manslaughter, gave three on the law of self-defense, two of which,

one for the state and one for the defendant, are unobjectionable. The other is as follows :

"8. The court instructs the jury that if Stiltz and Moore had a difficulty which resulted in the death of Moore, and that defendant commenced the difficulty in order to wreak his vengeance on Moore, or brought it on by any wilful or unlawful act of his, or of his own free will and inclination entered into the difficulty, then, there is no self-defense in the case, and the jury cannot acquit on that ground, and it makes no difference how imminent the peril in which defendant may have been placed during the affray."

This instruction is condemned and must be held to be fatal error on the authority of the following cases : *State v. Parker*, 96 Mo. 382 ; *State v. Gilmore*, 95 Mo. 554 ; *State v. Berkley*, 92 Mo. 41 ; *State v. Partlow*, 90 Mo. 608. The erroneous principle involved in it has been so recently and so thoroughly discussed in these cases, that further argument would be unprofitable. The proper formula for instructions on the law of self-defense and on manslaughter in the fourth degree, in a case of this kind, is given in *State v. Gilmore, supra.*

For the error of the court in giving instruction number eight for the state, and in neglecting to give a proper instruction on manslaughter in the fourth degree, the judgment is reversed and the cause remanded for a new trial. All concur except RAY, C. J., who dissents.