## FEARSON *v.* THE UNITED STATES.

CRIMINAL LAW; MURDER; MOTIVE; ACCIDENTAL HOMICIDE; SELF-DEFENCE; CAPITAL PUNISHMENT; STATUTORY CONSTRUCTION.

1. As tending to show motive, it is competent for the prosecution in a murder case to prove that the deceased maintained illicit relations with a woman with whom the accused was also unduly intimate, especially where there is other evidence that the accused intended to be revenged on deceased for his attentions to the woman.

2. When in such a case the accused testifies that he shot twice in rapid succession but with no intention of hitting the deceased, who, just prior to the shooting, which was from a window of the second story of the house of the accused, had been throwing stones at accused, one of which had gone through the window and broken a lamp, and that deceased was in the act of picking up stones when the accused went to get his pistol; but it otherwise appears the deceased was shot in the back and was some distance away from the house when the fatal shot was fired, it is not error for the trial court to refuse to submit to the jury the question whether the defendant acted in self-defence. The defence of accidental homicide is wholly inconsistent with that of homicide in self-defence.

3. Whether the act of Congress of January 15, 1897, providing that in cases of murder and rape the jury may qualify a verdict of

guilty by adding thereto "without capital punishment," is applicable to this District, *quære.*

4. That act does not repeal or in any manner affect the previously existing law beyond its provision to allow to the jury, upon a trial for the offence of murder, to determine by its verdict whether the sentence should be that of death or imprisonment for life.

No. 656.  Submitted March 12, 1897.  Decided April 6, 1897.

HEARING on an appeal by the defendant from a judgment of conviction on a verdict of guilty in a prosecution for murder. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Thomas C. Taylor* and *Mr. Andrew Y. Bradley* for the appellant.

*Mr. Henry E. Davis,* United States Attorney for the District of Columbia, and *Mr. John E. Laskey,* assistant, for the United States.

Mr. Justice MORRIS delivered the opinion of the Court:

The appellant, Christopher C. Fearson, was indicted in the Supreme Court of the District of Columbia, for the crime of murder, and was convicted, and from the judgment of conviction the present appeal has been prosecuted.

The crime charged against the appellant was the felonious homicide by him, on August 7, 1896, of one John E. Ford, a youth of about nineteen or twenty years of age, at a place in Georgetown known as Cissel's Alley, where the appellant resided.  The killing was accomplished by a pistol shot fired by the appellant, a fact which is abundantly proved and which is not contested by him.  The defence is, either that the killing was accidental, or that it was done in self-defence; for both of these pretensions are advanced in the record, notwithstanding that they are wholly inconsistent with each other.

The only exception that was taken to the admission of testimony in the case, so far as the record discloses, and

which has been brought here for review, is as to alleged evidence of the previous bad character of the defendant. There was proof that the defendant was living in illicit relations with one Mrs. Lillie Cooper, who was domiciled in his house in Cissel's Alley at the time of the homicide, and that young Ford was also unduly intimate with her. The prosecution then introduced testimony, which was admitted over the objection of the defendant's counsel, to the effect that several years before the shooting the defendant and the said Mrs. Cooper had lived together and maintained illicit relations. This is the testimony, the admission of which is here assigned as error, as being merely evidence of previous bad character on the part of the defendant.

But this contention on behalf of the appellant is plainly without foundation. This is not testimony as to previous bad character. The purpose was to show a motive for the homicide on the part of the appellant by the suggestion of jealousy of Ford's attentions to the woman with whom, as it was sought to be shown, he himself had maintained illicit relations for several years. And it was certainly competent testimony in that regard in connection with other evidence that the appellant intended to be revenged on the deceased for his attentions to the woman. There was clearly no error whatever in the admission of this testimony.

But the great burden of the argument on behalf of the appellant is based upon the alleged refusal of the trial court to submit to the jury the question whether the defendant had not acted in self-defence. This question it was proposed to raise on the testimony of the defendant himself, who went upon the witness stand as a witness on his own behalf. He testified in substance that he had fired the pistol twice in rapid succession, but without any intention of hitting the boy, and only thinking that he could scare him off; but that just prior to the shooting, which was from a window of the second story of the house, the boy had been banging at the door of the first story, as if endeavoring to effect an en-

trance, and had been throwing stones at the defendant, one of which had gone through the second story window and broken a lamp chimney inside, and that he was in the act of picking up stones to throw when the defendant went back from the window to get his pistol. It appears, however, that the deceased was struck in the back, and it is shown quite conclusively that he was some distance away from the house when the fatal shot was fired.

This is the testimony on which it is sought to be shown that the homicide was committed in self-defence. And it is clearly insufficiennt for any such purpose. Even if the defendant had acted deliberately for the protection either of his person or of his property against threatened violence, the circumstances did not justify the commission of homicide. It is quite plain to any mind that the taking of human life was not required to insure such protection. The earnest and assiduous industry with which counsel for the appellant have labored by argument and citation of authorities to support their contention, has wholly failed to adduce any authority that would justify the taking of human life as a matter of self-defence under such circumstances; and we are sure that no such authority can be found.

But the plain answer to this contention is that the defendant himself in his own testimony repudiates and conclusively negatives the defence that is sought to be set up for him by his counsel. The defendant is a man of mature years; he testified at the trial that he was then sixty-five years of age. There is no indication or intimation of mental incapacity on his part. On the contrary, by the fact of his being called as a witness in his own behalf, he is doubly certified as knowing the full purport of his acts and of his testimony. Now, therefore, when he says, as he does say very distinctly and positively, that he had no intention of hitting the boy, but that he merely sought to scare him off, he completely repudiates any theory that he acted in self-defence. As stated in the case of *Gilmore* v. *State*, 95 Mo.

554, self-defence is an affirmative, positive, intentional act. In order to justify it, the accused person must appear to have been acting under a reasonable belief of imminent danger from the deceased, and that there was a present and immediate necessity for him to act as as he did. *Beard* v. *United States,* 158 U. S. 550. But such reasonable belief and such imminent necessity are wholly inconsistent with an intention not to do the act which resulted in death, but some other and entirely harmless act. Accidental homicide and homicide in self-defence are wholly irreconcilable.

There may be accidental homicide resulting from an attempt to frighten away a supposed assailant; and of the theory of such accidental homicide the defendant received the full benefit in the general charge of the learned justice who presided at the trial of this case. For there he says: "If you have a reasonable doubt upon the question of the intent of the defendant at the time he fired, you should resolve that doubt in his favor, and find that the intent was to frighten only; you should find that his intent was to kill or injure only in case the evidence satisfies your minds thereof beyond all reasonable doubt." This fully covers the defendant's case upon his own testimony, and is as favorable to him as he was entitled to have it. To more than this he was not entitled. To the benefit of a wholly inconsistent and antagonistic theory of defence, not warranted by the testimony, he certainly was not entitled.

Since the argument of the case, our attention has been called to an act of the last Congress, approved on January 15, 1897, which is presumed to have some bearing on the subject. This act was not invoked in the argument before us either by the prosecution or by the defence; and, in fact, the sentence here was passed several days before the passage of the act. But it is now suggested that a proper construction of that act precludes the carrying into effect of the sentence which was imposed upon the appellant, upon the theory that the act in question abolished the penalty of

death for the crime of murder committed, as this was committed, prior to January 15, 1897.

Assuming that this act is applicable to the District of Columbia, which, however, we do not decide, and which may well be reserved, we find no sufficient justification either in the letter of the enactment or in its spirit for the contention here advanced.

The act in question contains five sections, of which only the first and fourth are claimed to be applicable to the present case. These are as follows:

"Sec. 1. That in all cases where the accused is found guilty of the crime of murder or rape under Sections 5339 or 5345, Revised Statutes, the jury may qualify their verdict by adding thereto, 'without capital punishment,' and whenever the jury shall return a verdict qualified as aforesaid the person convicted shall be sentenced to imprisonment at hard labor for life."

"Sec. 4. That nothing herein contained shall apply to or in any manner affect any proceeding or indictment found or pending or that may be found for any offence committed before the passage of this act, and all offences committed before the passage of this act shall be punished under the laws then in force; *Provided,* that juries may return qualified verdicts in such cases according to the provisions of Section 1 of this act, and the sentences shall be imposed as therein provided."

The argument is that, notwithstanding the express provisions of Section 4 of this act, which standing alone and apart from the *proviso* appended to it would, beyond all question, exclude offences previously committed from any and all operation of the act, and make the act to every intent and purpose purely and simply prospective, yet the effect of the *proviso* is virtually to nullify the previous part of the section and to abolish the penalty of death as a punishment for the crime of murder committed before the passage of the act. In view of the well-known rule for the

construction of statutes, which requires us to give effect, if possible, both to their letter and to their spirit, and to each and every part of them, especially where their meaning is clear beyond all possibility of doubt, as it certainly is in the fourth section of this act, apart from the *proviso*, we are bound to scan carefully the course of reasoning which would lead to a contrary result. We think that the course of reasoning which would so lead us in this instance is strained, unnatural, and unwarranted by anything that appears in the státute itself or by the circumstances which we may assume to have led to its enactment.

The *proviso* of the fourth section contains two clauses,— the first to the effect that even in pending causes and upon trial for offences previously thereto committed, the jury might render a qualified verdict, as provided in the first section of the act; and the second to the effect that, in that event, the sentence to be imposed should likewise be as provided in the first section. There is nothing in this antagonistic to the previous part of the section ; and nothing that precludes the imposition of the death penalty when the jury does not render a qualified verdict. There might possibly be some force, more apparent than real, in the argument if the second clause of the *proviso* stood alone. But plainly that clause is dependent on the first clause, and the plain import of both is that, in all trials for the crime of murder thereafter to be had, while the punishment was to be according to existing law, if the crime was committed before the act, yet even then the jury might qualify its verdict, and if it did so qualify its verdict, the sentence should be in accordance with the qualification. When there is no qualification of its verdict by the jury, the sentence cannot be under this act, but must be under previously existing law. There is no pretence anywhere in the act of January 15, 1897, either express or by implication, to provide a penalty for the crime of murder different from the previous penalty in any case whatever except where the jury has rendered a

qualified verdict. For that event and for that event alone, the act provides, so far as the two sections cited are concerned; and we fail to find any inconsistency whatever between the provisions of the statute in that regard, and the continued force and operation of previous statutes providing for other and entirely different contingencies. We are satisfied that the act of January 15, 1897, is limited, and was intended by Congress to be limited, so as not to repeal or in any manner to affect previously existing law beyond its provision to allow to the jury, upon a trial for the offence of murder, to determine by its verdict whether the sentence should be that of death or that of imprisonment for life. We think that, so far from its provisions being inconsistent with the continued operation of other statutes providing for the imposition of the penalty of death, they would be unintelligible and unreasonable in the absence of those statutes.

Finding no error in the rulings of the trial court, and no force in the suggestion of the application of the act of Congress of January 15, 1897, we must *affirm the judgment in this case. And it is so ordered.*